UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

972 IRREVOCABLE TRUST and
INTERMED GAS PRODUCTS, LLC,

           **Plaintiffs**

**v.**

MICHAEL LAING, ROBERTA PUGLIESE,
LAING HOLDINGS CORPORATION and
INTERACTIVE MEDICAL TECHNOLGIES, CORP.
           **Defendants.**

Case No.:  08-CIV-04907 RPP-HP
ECF CASE

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION DISMISS PLAINTIFFS' COMPLAINT IN PART OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE TO SOUTHERN DISTRICT OF FLORIDA

Defendants, MICHAEL LAING (hereinafter referred to as "LAING"), ROBERTA PUGLIESE (hereinafter referred to as "PUGLIESE"), LAING HOLDINGS CORPORATION (hereinafter referred to as "LHC"), INTERACTIVE MEDICAL TECHNOLGOIES, CORP. (hereinafter referred to as "IMT")(collectively hereinafter referred to as "Defendants"), by and through their undersigned counsel, and pursuant to the applicable Federal Rules of Civil Procedure § 12(b)(2), 12(b)(3) and 12(b)(6), 28 U.S.C. §1404(a), hereby serve their Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Complaint in Part or in the Alternative, Motion to Transfer Venue to Southern District of Florida and states as follows:

### I.      PROCEDURAL POSTURE

On April 16, 2008, Plaintiffs, 972 Irrevocable Trust ("972") and Intermed Gas Products, LLC ("the Company") (collectively "Plaintiffs") filed their Complaint ("the Complaint") in the Supreme Court of the State of New York, New York County for two counts for Breach of Contract, Breach of

Fiduciary Duty, an Accounting, two counts for Conversion, Embezzlement, Wasting Corporate

Opportunity, Intentional Interference with Business Relationships and Negligence. On April 28,

2008 Defendants' were served with a copy of the Complaint. On May 28, 2008, Defendants filed a

Notice of Removal in this Court removing said case from the Supreme Court of the State of New

York, New York County. On the same day, Defendants' filed a Notice of Filing of Notice of

Removal in the Supreme Court of the State of New York, New York County.

## II.    LEGAL STANDARD FOR MOTION TO DISMISS

On a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)* for failure to state a claim upon

which relief can be granted, although the court must accept the factual allegations of the complaint

and draw all reasonable inferences in favor of the plaintiff, the issue is "whether [plaintiff] is entitled

to offer evidence to support his claim." *Broder v. Cablevision Sys. Corp., 329 F. Supp. 2d 551, 556*

*(S.D.N.Y. 2004), aff'd, 2005 U.S. App. LEXIS 16811 (2d Cir. Aug. 11, 2005),* citing *Bernheim v. Litt,*

*79 F.3d 318, 321 (2d Cir. 1996).* Where no claim has been stated against a named defendant, as is the

case, here, dismissal is warranted. *Fed. R. Civ. P. 12(b)(6).*

## III.   THE COMPLAINT SHOULD BE DISMISSED AS TO DEFENDATS PUGLIESE
## AND IMT FOR LACK OF PERSONAL JURISDICTION

As an initial matter, there are *no* factual allegations in the Complaint or exhibits attached

thereto to establish personal jurisdiction over Defendants Pugliese or IMT, and indeed none of the

traditional bases for personal jurisdiction are present as to those defendants. As a general matter,

without a showing far greater than that Plaintiffs have made, a contractual consent to jurisdiction

clause does not apply to defendants who were not parties to the contract in which the consent to

jurisdiction clause appears. See *Yung v. Lee,* No. 00 Civ. 3965, 2002 WL 31008970, at *2 n.2

(S.D.N.Y. Sept. 5, 2002) Nor can there be a finding of general or specific jurisdiction under a

"minimum contacts" theory with regard to the claim(s) alleged against those Defendants. As such, it would therefore be improper and unfair to subject Defendants Pugliese and IMT to suit here.

Plaintiffs' bear the burden of establishing that the Court has personal jurisdiction over Defendants. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990), *cert. denied, 498 U.S. 854 (1990)*. Plaintiff is required, at a minimum, to allege and demonstrate a *prima facie* case sufficient to justify the exercise of jurisdiction. *Id.*

With limited exceptions not applicable here, federal district courts have no broader power over persons outside the state in which they sit than do the local state courts. Courts may exercise personal jurisdiction over nonresidents where any of the following three "traditional" bases for personal jurisdiction exist: (1) service of persons physically present in forum state; (2) domicile within the state; and (3) consent or appearance in the action. *Burnham v. Superior Court, 495 U.S. 604, 609 (1990)*. See also *CPLR § 301* ("Jurisdiction over persons, property or status"). There is *no* traditional basis alleged for jurisdiction over Defendants.

In the instant action, there are *no* allegations that Defendants Pugliese or INT have engaged in any significant activities in New York or created continuing obligations between themselves and New York residents. *See Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 109 (1987)* ("[j]urisdiction is proper where the contact proximately results from the actions by the defendant himself that create a substantial connection with the forum state") (citations omitted); *Burger King, 471 U.S. at 475-476* (a defendant has purposefully availed himself of the benefits of a forum if he has deliberately 'engaged in significant activities within a state or has created continuing obligations' between himself and the residents of the forum.' "); *Tsegaye v. Impol Alum. Corp., 2003 U.S. Dist. LEXIS 1397, **17-18 (S.D.N.Y. Jan. 30, 2003)* (dismissing claim against non-domiciliary

as there was no statutory basis for jurisdiction in New York). As an initial matter, it is respectfully submitted that there can be no basis for personal jurisdiction as Defendants Pugliese or INT.

Even if Plaintiff had alleged that Defendants Pugliese and INT have transacted business in New York systematically and regularly, the Court would have to make a further inquiry. To determine whether a defendant is "doing business" in New York, the court must "analyze a defendant's connections to the forum state 'not for the sake of contact-counting, but rather for whether such contacts show a continuous, permanent and substantial activity in New York.' " Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990) (emphasis added), citing Weinstein, Korn & Miller, NEW YORK CIVIL PRACTICE, ¶ 301.16; Gross v. Bare Escentuals, Inc., 2005 U.S. Dist. LEXIS 6570, *6 (S.D.N.Y. 2005) (trademark dispute against California corporations dismissed for lack of personal jurisdiction). There are no factual allegations regarding Defendants Pugliese or INT activities in New York and no allegation that those defendants engaged in affirmative conduct promoting the transaction of business in New York. Defendants Pugliese and INT do not have sufficient contacts with the state to be subject to general jurisdiction in New York (See affidavit of Roberta Pugliese attached hereto, "Pugliese Aff.").

Neither is there any basis for jurisdiction under New York's "long-arm" statute, CPLR § 302. (Pugliese Aff.) See also International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (under the Supreme Court's due process jurisprudence, personal jurisdiction depends on whether defendants have sufficient "minimum contacts" with New York, such that maintaining the suit "does not offend traditional notions of fair play and substantial justice."); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (the purpose of the "minimum contacts" requirement is to ensure that states do not reach out beyond the limits of sovereignty and to provide defendants with fair warning as to when an

activity may subject them to the jurisdiction of a foreign sovereign).

Because the claims arose without any alleged contact between defendants and New York, the exercise of specific jurisdiction here would be manifestly improper. All claims against defendants Pugliese and INT should be dismissed pursuant to *Fed. R. Civ. P. 12(b)(2)* (lack of personal jurisdiction). Moreover, as set forth below, several causes of action in the Complaint fail to set forth a claim upon which relief may be granted.

## IV.    THE THIRD, FOURTH, FIFTH, SIXTH, SEVENTH, NINTH, AND TENTH CAUSES OF ACTION IN PLAINTIFFS COMPLAINT SHOULD BE DISMISSED AS TO DEFENDATS LAING AND LHC FOR LACK OF PERSONAL JURISDICTION

In the Operating Agreement entered into by Laing and LHC, they agreed to submit to the exclusive jurisdiction of the Courts of New York "in connection with any suit, action or proceeding related to this agreement or any of the matters contemplated hereby, irrevocably waives any defense of lack of personal jurisdiction......" (See Exhibit "B" to Plaintiff's Complaint, par. 12.4). Accordingly, although Plaintiffs Complaint does not even allege a basis of personal jurisdiction over Defendant LHC, Defendants will not raise that defense in this Motion to Dismiss as to the First and Second Cause of Action as they relate specifically to alleged breaches of the aforementioned Operating Agreement by Defendants Laing and LHC respectively.

Contractually based forum selection and consent to jurisdiction clauses, such as those in the Operating Agreements attached to Plaintiffs' Complaint, will encompass related tort claims only "if the tort claims ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract." *See Direct Mail Prod. Servs. Ltd. v. MBNA Corp., No. 99 Civ. 10550, 2000 WL1277597, at *6 (S.D.N.Y. Sept. 7, 2000) (citations and*

*quotations omitted)*. The basic inquiry is thus "whether the plaintiff's claims depend on rights and duties that must be analyzed by reference to the contractual relationship." *Id.; see also Bank of Am. Nat'l Trust & Savings Ass'n v. Private Trust Corp. Ltd., No. 97 Civ. 4573, 1998 WL 230991, at \*4-5 (S.D.N.Y. May 6, 1998)*.

Here, Plaintiffs bring several claims against Laing and LHC directly; breach of fiduciary duty, conversion, embezzlement, intentional interference with business relationships, negligence an accounting and wasting corporate opportunity,[FN1] none of which arise out of or are based upon the Operating Agreement or the transactions contemplated thereby.

> FN1. Even if the Court finds that it has personal jurisdiction over Laing and LHC on the First and Second Causes of Action (alleged breaches of the Operating Agreement), it does not necessarily follow that the Court may assert jurisdiction over Laing and LHC on all of the claims in the Plaintiffs' Complaint. As this and other federal courts have recognized, the personal jurisdiction analysis is both defendant-specific and claim-specific. *See Sunward Elecs.,* 362 F.3d at 24 ("A plaintiff must establish the court's jurisdiction with respect to *each* claim asserted.") (emphasis in original); *First Capital Asset Mgmt v. Brickellbush, Inc., 218 F. Supp. 2d 369, 397-98 (S.D.N.Y. 2002)*. Here, the Court may retain jurisdiction over the First and Second Causes of Action while dismissing the remaining causes of action as against Laing and LHC. *See Nasso v. Seagal, 263 F. Supp. 2d 596, 612 (E.D.N.Y. 2003)* (court had jurisdiction over claims for breach of contract, breach of fiduciary duty and unjust enrichment claims, but not over claims for seizure of corporate opportunities, conversion and misrepresentation).

Plaintiffs' claims other than the Breach of Contract claims made in the First and Second Causes of Action do not arise out of nor are they contemplated by the Operating Agreement, nor will they require the Court to interpret the provisions in that contract. Here, the breach of the Operating Agreement claim here is not at all central to the remaining causes of action in Plaintiffs' Complaint.

As to the adjudication of these claims not depending on any analysis of the Operating Agreement or the rights and obligations of the parties thereto, the extension of jurisdiction to such claims is inappropriate. *See Gen. Envtl. Sci. Corp. v. Horsfall, 753 F. Supp. 664, 668 (N.D. Ohio 1990)* (where defendants attempted to enforce contractual jurisdiction clause in case involving federal RICO claims, court would not treat case as arising out of contract but "[i]nstead it [would] be deemed to have arisen out of the Plaintiff's ongoing business relationships with the Defendants"); As such, Plaintiffs have failed to make the required prima facie showing that Defendants are subject to the Court's jurisdiction based on the Operating Agreement as to the Third, Fourth, Fifth, Sixth, Seventh and Ninth Causes of Action in Plaintiffs' Complaint.

## V.    PLAINTIFFS CLAIMS AGAINST LAING AS STATED IN THE FIFTH CAUSE OF ACTION OF PLAINTIFFS COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A. FIFTH CAUSE OF ACTION-CONVERSION

The elements of conversion are (1) intent, (2) interference "to the exclusion of the owner's rights," *Employers' Fire Ins. Co. v Cotten, 245 NY 102, 156 NE 629 (1927)* and (3) possession, or the right to possession in plaintiff, see generally; *Meese v Miller, 79 AD2d 237, 436 NYS2d 496(4th Dep't 1981)*. In order to state a cause of action, plaintiff must establish legal ownership of a specific identifiable piece of property and the defendant's exercise over or interference with the property in defiance of plaintiff's rights, *Ahles v Aztec Enterprises, Inc., 120 AD2d 903, 502 NYS2d 821(3rd*

*Dep't 1986)*; *see Di Siena v Di Siena, 266 AD2d 673, 698 NYS2d 93(3rd Dep't 1999)*. Clearly, the allegations contained in Plaintiffs' Complaint, namely that Defendants Laing and LHC have exercised dominion and/or control over customer files, documents and the Company's inventory do not allege a "specific identifiable piece of property" as required by New York law. In the instance of the allegations with regard to "customer lists" and "documents", Plaintiff makes no claim that said items are confidential, proprietary, or may constitute a trade secret. Accordingly, Plaintiff's have failed to state a claim in their Fifth Cause of Action.

## VI.    PLAINTIFFS CLAIMS AGAINST LAING AND LHC AS STATED IN THE FOURTH, SIXTH AND TENTH CAUSE OF ACTION OF PLAINTIFFS COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A. FOURTH CAUSE OF ACTION-ACCOUNTING

In order to sustain an action for accounting under New York law a party must establish four elements: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." *Dayan Enterprises Corp. v. Nautica Apparel Inc. 2003 WL 22832706 (S.D.N.Y. 2003) citing  Pressman v. Estate of Steinvorth, 860 F.Supp. 171, 179 (S.D.N.Y.1994)*.

*In Dayan Enterprise, supra,* the Court noted the following: "Nautica alleges Dayan's royalty and advertising obligations arise out of the license agreement itself. Thus, a damages suit for breach of contract suit provides an adequate legal remedy." *See also Arrow Communications Labs. v. Pico Prods. Inc., 219 A.D.2d 859, ----, 632 N.Y.S.2d 903, 905 (4th Dep't 1995)* ("Where a party seeks an accounting, but the primary demand is for monetary damages, '[t]he accounting is merely a method to determine the amount of the monetary damages. The action therefore sounds in law and not in

equity.") (citation omitted). It is no different in the instant action. Laing and LHC's obligations arose out of the Operating Agreement and as President of the Company. Hence, Plaintiffs will be able to seek discovery as to the measure of damages, encompassing all the information they seek in their Accounting Cause of Action. Additionally, throughout Plaintiffs Complaint, they state with particularity the minimum amount of damages they are seeking for each claim. As such, Plaintiffs have failed to state a claim for an Accounting and this Cause of Action should hereby be dismissed.

## B. SIXTH CAUSE OF ACTION-EMBEZZLEMENT

Defendants are not aware of any civil cause of action in and of itself for Embezzlement in New York. As the allegations contained in this Cause of Action state that Laing and LHC "converted monies he was entrusted to hold and deposited monies into his own bank accounts", Defendants will treat this Cause of Action as one for Conversion.

To state a cause of action for conversion, a plaintiff must establish that it is the legal owner or has the immediate right of possession of tangible personal property or specific money and that the defendants have interfered with plaintiffs rights of ownership or possession. *Fiorenti v. Central Emergency Physicians, PLLC, 305 A.D.2d 453, 454-55, 762 N.Y.S.2d 402, 403-04 (2nd Dep't 2003)*. When the item sought to be recovered is money as is the case in the instant action, plaintiff must seek to recover **the specific amount** of the claimed loss. *Fuchs v. Wachovia Mortg. Corp., No. 17000-03, 2005 WL 3076343, at \*6 (N.Y. Sup. Nassau Co. Nov. 15 2005)*. (emphasis added) The money must be specifically identifiable and segregated in order to be the subject of an action in conversion; if the allegedly converted money is incapable of being described or identified in the same manner as specific chattel, it is not the proper subject of a conversion action. *See Global View Ltd. Venture Capital v. Great Central Basin Exploration, L.L.C.*, 288 F. Supp. 2d 473, 480

(S.D.N.Y. 2003) (VM).

Here, Plaintiffs allege (Plaintiff's Complaint, par. 104) that Laing and LHC "converted the monies he was entrusted to hold." That is essentially it as it relates to this claim. Although Plaintiffs make allegations that Laing and LHC converted "monies", they fail to identify any segregated amount of specifically identified money converted by Laing and LHC. Thus, Plaintiffs fail to state a cause of action for conversion and it is respectfully submitted that it should be dismissed. *See Global, 288 F. Supp. 2d at 480* (conversion claim failed because unspecified references to "monies and assets ... in an amount in excess of $75,000" did not constitute the requisite segregated amount of specifically identified money).

## C. TENTH CAUSE OF ACTION-NEGLIGENCE

In Plaintiffs' Tenth Cause of Action, they allege Laing and LHC committed various actions or inactions in their capacity as President of the Company. Actions taken by corporate directors and officers are protected by the business judgment rule. The business judgment rule is a presumption which "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." *Auerbach v. Bennett, 47 N.Y.2d 619, 629, 419 N.Y.S.2d 920, 926, 393 N.E.2d 994, 1000 (1979)*

The purpose of the business judgment rule is to avoid "judicial second-guessing" of corporate decisions and to protect those decisions, so long as the decision is made in good faith and after reasonable investigation. *Id.* The rule, codified into the standards of conduct prescribed in *Sections 715(h)* and *717(a) of the Business Corporation Law, N.Y. Bus. Corp. Law §§ 715(h), 717(a)* requires that corporate directors and officers perform their duties "in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances." *N.Y.*

*Bus. Corp. Law §§ 715(h)* (standard of care applied to officers); *717(a)* (standard of care applied to directors)  The New York Court of Appeals explained in *Auerbach v. Bennett*:  [T]he business judgment doctrine ... is grounded in the prudent recognition that courts are ill equipped and infrequently called on to evaluate what are and must be essentially business judgments ... . [B]y definition the responsibility for business judgments must rest with the corporate directors; their individual capabilities and experience peculiarly qualify them for the discharge of that responsibility. Thus, absent evidence of bad faith or fraud ... the courts must and properly should respect their determinations. *Auerbach v. Bennett, 47 N.Y.2d 619, 629–631, 419 N.Y.S.2d 920, 926–927, 393 N.E.2d 994, 1000 (1979).*

Thus, under the business judgment rule, directors "are presumed to have acted properly and in good faith, and are called to account for their actions only when they are shown to have engaged in self-dealing or fraud, or to have acted in bad faith. " *Crouse-Hinds Co. v. InterNorth, Inc., 634 F.2d 690, 702 (2d Cir. 1980)* (internal quotation marks and citation omitted) (applying New York law)  The burden falls on the party challenging a transaction to demonstrate that the officer or director acted with self-interest or bad faith. *Id.* The business judgment rule applies in a limitless variety of circumstances; thus, each matter must be evaluated on its individual facts. A shareholder claiming gift or waste of corporate assets, for example, will be required to demonstrate that "no person of ordinary sound business judgment would say that the corporation received fair benefit" with regard to the challenged transaction or decision. *Aronoff v. Albanese, 85 A.D.2d 3, 5, 446 N.Y.S.2d 368 (2d Dep't 1982); see also Blake v. Blake, 225 A.D.2d 337, 638 N.Y.S.2d 632, 633 (1st Dep't 1996).* Thus, if reasonable business people would disagree regarding whether the corporation gave sufficient consideration to a particular transaction, courts will uphold the challenged transaction. *See, Aranoff*

*5-6.* The rule does not insulate decisions alleged to have been affected by a conflict of interest, lacking a legitimate business purpose, or involving fraud, self-dealing or a waste of corporate assets. *Wolf v. Rand, 258 A.D.2d 401, 404, 685 N.Y.S.2d 708, 711 (1st Dep't 1999), Amfesco Industries, Inc. v. Greenblatt, 172 A.D.2d 261, 262–64, 568 N.Y.S.2d 593, 595–96 (1st Dep't 1991) Patrick v. Allen, 355 F. Supp. 2d 704, 712 (S.D. N.Y. 2005)* Clearly, Plaintiffs allegations in this Cause of Action do not rise to a level that warrant piercing the Business Judgment Rule. Moreover, Plaintiffs' Tenth of Cause of Action is precluded by virtue of the Economic Loss Rule. *See Labajo v. Best Buy Stores, L.P. 478 F.Supp.2d 523 (S.D.N.Y. 2007)* Accordingly, Plaintiffs have failed to State a Claim in their Tenth Cause of Action and it should hereby be dismissed.

## VII.   PLAINTIFFS CLAIMS AGAINST PUGLIESE AND IMTAS STATED IN THE EIGHTH CAUSE OF ACTION OF PLAINTIFFS COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Under New York law, to succeed on a claim of tortious interference with contractual relations, Holmstrom must show "(a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Independent Asset Management LLC v. Zanger, 538 F.Supp.2d 704, 711 (S.D.N.Y. 2008); Albert v. Loksen, 239 F.3d 256, 274 (2d Cir.2001).* The New York Court of Appeals has described the "intention" required by the third prong as "an intention to harm plaintiff without economic or other lawful excuse or justification." *Independent Asset Management, LLC at 711; Alvord & Swift v. Stewart M. Muller Constr. Co., 46 N.Y.2d 276, 413 N.Y.S.2d 309, 385 N.E.2d 1238, 1241 (1978).* In *Independent Asset Management, LLC,* the Court noted that conclusory allegation that the Defendant had intentionally and improperly caused another to breach the contract was not sufficient. *Independent Asset*

*Management, LLC at 711*. The Court found that Plaintiff in that case alleged no facts that would illustrate that the Defendant engaged in the complained-of conduct for the purpose of causing another to breach its contract with Plaintiff, let alone that he acted with an intent to harm Plaintiff. *Id.*

The allegations in this case are strikingly similar to those in *Independent Asset Management, LLC.* In both paragraphs 115 and 116 of Plaintiffs Complaint, Plaintiffs make the conclusory allegation that Pugliese and IMT's intentional and wrongful acts prevented Defendant Laing from complying with the operating agreement. There is no allegation that either Pugliese and/or IMT had knowledge of the existence of the aforementioned Operating Agreement nor "an intention to harm Plaintiff without economic or other lawful excuse or justification". Accordingly, Plaintiffs' Eighth Cause of Action against Defendants Pugliese and IMT should be dismissed.

## VIII.    PLAINTIFFS COMPLAINT AGAINST ALL DEFENDANTS SHOULD BE DISMISSED AS IT PERTAINS TO CLAIMS MADE BY PLAINTIFF 972 IRREVOCABLE TRUST

Plaintiffs have alleged no basis for personal jurisdiction as it relates to any claims against the Defendants as it relates to Defendant 972 Irrevocable Trust. Moreover, none of the Causes of Action in Plaintiffs Complaint reference how any action or inaction may have caused damage to Plaintiff 972 Irrevocable Trust. Accordingly, Plaintiffs Complaint as it relates to them should be dismissed in its' entirety.

## IX.    DEFENDANTS PUGLIESE AND IMT'S MOTION FOR DISMISSAL OF PLAINTIFFS' COMPLAINT FOR LACKOF VENUE OR TRANSFERRED TO THE SOUTHERN DISTRICT OF FLORIDA

There are three ways to justify venue in this purported diversity action. First, if all the defendants reside in the same state, venue is proper in that state. *28 U.S.C. § 1391(a)(1)*. Second,

venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise

to the claim occurred or a substantial part of property that is the subject of the action is situated." _Id._

_at § 1391(a)(2)_. Third, if there is "no district in which the action may otherwise be brought," venue is

proper where "any defendant is subject to personal jurisdiction at the time the action is commenced."

_Id. at § 1391 (a)(3)_.

A plaintiff bears the burden of establishing the propriety of its chosen venue. See ZPC 2000,

Inc. v. SCA Group, Inc., 86 F. Supp. 2d 274, 276 (S.D.N.Y. 2000) ("Once an objection to venue has

been raised, the plaintiff bears the burden of establishing that venue is proper"); _Universal Marine_

_Med Supply, Inc. v. Lavecchio, 8 F. Supp. 2d 214, 219 (E.D.N.Y. 1998)_ (plaintiff bears burden of

establishing that venue is proper in district in which complaint was filed).

Where, as here, venue has been improperly laid, "[t]he district court ... shall dismiss, or if it

be in the interest of justice, transfer such case to any district... in which it could have been brought."

_28 U.S.C. § 1406(a)_.

## A.  **This Action Should Be Dismissed Or Transferred Pursuant to  Since Venue Does Not Lie in This Court.**

Plaintiffs have not even come close to meeting his venue burden with respect to the three

possible bases for venue. First, none of the Defendants reside in the Southern District of New York,

and therefore their residences cannot justify venue here. _See 28 U.S.C. § 1391(b)(1)_.  Here, Pugliese

is a resident of Palm Beach County, Florida while IMT is a Florida corporation with its' principal

place of business in Palm Beach County, Florida.   Accordingly, they are residents of Florida.

(Pugliese Aff.).[FN2]

FN2. For defenses raised under _Rule 12(b)(3)_, the court "may consider matters

outside the pleadings, and often must do so, since without [the] aid of such outside

materials the court would be unable to discern the actual basis ... of a party's challenge to the bare allegation in the complaint that venue is proper ...." *Carrano v. Harborside Healthcare Corp., 199 F.R.D. 459, 461 (D. Conn. 2001) (citations omitted)*.

Second, venue in the Southern District of New York is not proper as nothing related to Plaintiffs' Complaint occurred in this judicial district, much less "a substantial part of the events." *See 28 U.S.C. § 1391(b)(2)*. Any review of Plaintiffs' Complaint reveals that they do not identify where any of the alleged events occurred, let alone a substantial portion thereof. The only reference in Plaintiffs filings to Venue is on the Summons wherein it states that "Plaintiff designates New York County as the place of trial" and that "the basis of the venue is Plaintiff's place of business". As Plaintiff is referred to on the Summons in the singular, we can only assume Plaintiffs' are referring to Plaintiff Intermed Gas Products, LLC. In short, any alleged event germane to this lawsuit had to have occurred in the Southern District of Florida. (See Laing Affidavit attached hereto, "Laing Aff." and Pugliese Aff.) As a result, venue cannot be sustained under *28 U.S.C. § 1391(b)(2)*.

Third, *28 U.S.C. § 1391(b)(3)* does not apply. This subsection, authorizing venue in any "judicial district in which any defendant may be found," only applies "if there is no district in which the action may otherwise be brought." *Dolson v. New York State Thruway Auth., No. 00 Civ. 6439, 2001 WL 363032, at \*2 (S.D.N.Y. April 11, 2001); Amaker v. Haponik, 198 F.R.D. 386, 392 (S.D.N.Y. 2000); McDonald v. Gen. Accident Ins. Co., No. 96-CV-326, 1996 WL 590722, at \*2 (N.D.N.Y. Oct. 7, 1996)*. As discussed above, Plaintiffs do not allege where the relevant alleged acts occurred while Defendants Laing and Pugliese have identified that virtually any events or omissions that may have given rise to Plaintiffs' claims occurred in the Southern District of Florida; as such, the

requirement for venue in the Florida's Southern District Court is met.

The Court should therefore dismiss Plaintiffs' Complaint because "none of the complaint's allegations support even a colorable argument for venue in this district." *Feldman v. L & M Mowing, Inc., No. 98 CV 4246, 1999 WL 284983, at *3 (E.D.N.Y. May 3, 1999)* (dismissing complaint for lack of proper venue because "the facts suggest that Plaintiff knowingly filed this action in the wrong venue, and support a dismissal rather than transfer"); *Kazlow v. Hade, No. 89 Civ. 5402, 1990 WL 139030, at *2 (S.D.N.Y. Sept. 14, 1990)* (dismissing case in which there was clearly no basis for venue in New York and the complaint contained "manifest defects").

### B. Alternatively, This Action Should Be Transferred To The Southern District Of Florida Court Pursuant to 28 U.S.C. § 1404(a).

Even if venue were proper in this district (which it is not), this action should be transferred to the Southern District of Florida pursuant to *28 U.S.C. § 1404(a)*. That statute allows transfer of a case "[f]or the convenience of parties and witnesses, [and] in the interest of justice" to a district "where it might have been brought."

The convenience of witnesses is an important - if not *the most* important - consideration in a *§ 1404(a)* analysis. *See, e.g., 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 134 (S.D.N.Y. 1994)* ("The convenience of both party and non-party witnesses may be the single most important factor in the analysis of whether one forum is more appropriate than a competing forum."); *U.S. Fidelity & Guar. Co. v. Republic Drug Co., Inc.*, 800 F. Supp. 1076, 1081 (E.D.N.Y. 1992) (residence of witness is important factor in transfer analysis); *Advance Relocation & Storage, Inc. v. Wheaton Van Lines, Inc., No. CV 99-2491, 2000 WL 33155640, at *4 (E.D.N.Y. Sept. 15, 2000)* ("convenience of witnesses, is a key factor, if not the most important factor in the venue transfer analysis").

As explained above, a significant amount of the alleged events at issue took place in Florida, which is where a lion's share of the potential witnesses reside. (See Laing Aff., Pugliese Aff.) Multiple witnesses from Florida will testify as to the crucial facts surrounding each claim.

Another factor, the locus of operative facts, also strongly favors transfer. The alleged events that may have lead to this lawsuit took place in Florida, and actions taken by Defendants were done so from Florida. All the Defendants are residents of Florida.

Plaintiffs' forum choice deserves no deference because the relevant conduct took place in Florida. *See, e.g., Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998)*("emphasis placed by a court on [plaintiffs] choice diminishes where the operative facts upon which the litigation is brought bear little material connection to the chosen forum") (internal quotation marks and citation omitted); *Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 990 (E.D.N.Y. 1991)* ("[W]here the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiffs chosen forum, then the plaintiffs choice is not accorded the same great weight and in fact is given reduced significance."). The interests of justice will be equally served by transferring this action to Southern District of Florida.[FN3]

> FN3. Moreover, the Southern District Court of Florida can exercise personal jurisdiction over all of the defendants. *See Anglo American Ins. Group, PLC v. CalFed, Inc., 916 F. Supp. 1324, 1330 (S.D.N.Y. 1996)* (transferee court - in addition to being a proper venue - must have personal jurisdiction over defendant on the date of commencement of the claim). According to Plaintiffs' Complaint, Defendants are all citizens of the State of Florida, and subject to personal jurisdiction in Florida. Laing and Pugliese are Palm Beach County residents while Defendants LHC and

IMT are Florida corporations with their principal place of business being located in

Palm Beach County, Florida as well. (Laing Aff. , Pugliese Aff.).

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court: (i) dismiss

Plaintiffs' Complaint as to Defendants Pugliese and IMT for lack of personal jurisdiction pursuant to

*Fed. R. Civ. P. 12(b)(2)* (ii) dismiss Plaintiffs' Fourth, Fifth, Sixth, Eighth and Tenth Causes of

Action in their Complaint for failure to state a claim as to the pursuant to *Fed. R. Civ. P. 12(b)(6)*

(iii) dismiss the Complaint in its' entirety as it pertains to Plaintiff 972 Irrevocable Trust, LLC

pursuant to *Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6)* (iv) dismiss the Plaintiffs'

Complaint for improper venue pursuant to *Fed. R. Civ. P. 12(b)(3)* and *28 U.S.C. § 1406(a)* or,

alternatively, transfer venue to the United States District Court for the Southern District of Florida

pursuant to *28 U.S.C. § 1404(a)*, and grant such other and further relief as the Court may deem just

and proper.


Dated June 3rd , 2008                    s/ Jeffrey M. Glotzer
                                         Jeffrey M. Glotzer (Attorney Bar Code # JG2620)
                                         Email: Jeff@jeffglotzerlaw.com
                                         JEFFREY M. GLOTZER, P.A.
                                         6111 Broken Sound Pkwy, NW, Suite 330
                                         Boca Raton, Florida 33487
                                         Telephone :    (561)443-1994
                                         Facsimile:     (561)431-3104
                                         *Attorney for Defendants*