Robert L. Rimberg, Esq. (RLR2453)
Joel S. Schneck, Esq. (JSS7019)
GOLDBERG & RIMBERG, PLLC
115 Broadway – 3rd Floor
New York, New York 10006
Phone: (212)697-3250
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

972 IRREVOCABLE TRUST and
INTERMED GAS PRODUCTS, LLC.                    Docket No.  1:08-cv-04907-RPP

                  Plaintiffs,

    -against-

MICHAEL LAING, ROBERTA A.
PUGLIESE, LAING HOLDINGS
CORPORATION and INTERACTIVE
MEDICAL TECHNOLOGIES, CORP.,

                  Defendants.
------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE

## Table of Authorities

**Cases**

*Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir.1985)............................................. 8

*Brenntag Int'l Chems. Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) ................ 7

*Canadian Javelin Ltd. v. Brooks*, 462 F.Supp. 190 (S.D.N.Y. 1978)................................ 9

*Ecolab, Inc. 11- v. Paolo*, 753 F.Supp. 1100, 1110 (E.D.N.Y. 1991) ................................ 7

*EMI Latin v. Bautista*, 2003 WL 470333, at *14................................................................. 7

*Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)................... 8

*Painewebber Inc. v. Nwogugu*, 1998 WL 545327, at *2 (S.D.N.Y. 1998)......................... 8

*Register.com, Inc. v. Verio, Inc.*, 126 F.Supp.2d 238, 248 (S.D.N.Y. 2000)...................... 8

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) ....................... 7

*Roso-Lino Beverage Distribs., Inc. v. Coca -Cola Bottling Co. of New York, Inc.*, 749 F.2d 124,

    126 (2d Cir. 1984)......................................................................................................... 7

*S.E.C. v. Princeton Econ. Int'l, Ltd.*, 73 F. Supp. 2d 420, 425 (S.D.N.Y. 1999) ............... 7

*Smith v. Goord*, 2007 WL 2229832, at * 1 (W.D.N.Y. July 31, 2007) .............................. 6

*Tom Doherty Assocs. v. Saban Entmt., Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995)................. 6

*Travelers Int'l AG v. Trans World Airlines, Inc.*, 684 F. Supp. 1206, 1216 (S.D.N.Y. 1986)

....................................................................................................................................... 9

*Velez v. Prudential Health Care Plan of N.Y.*, 943 F. Supp. 332, 338 (S.D.N.Y. 1996). .. 6

*Xelus, Inc. v. Servigistics, Inc.*, 371 F.Supp.2d 387, 390 (W.D.N.Y. 2005)...................... 7

## PRELIMINARY STATEMENT

Plaintiffs 972 Irrevocable Trust ("972") and Intermed Gas Products, LLC ("Intermed") (collectively referred to as the "Plaintiffs") submit this Memorandum of Law in support of their order to show cause seeking orders: (a)  pursuant to F.R.C.P.R. 65 (a) and (b) granting a temporary restraining order and preliminary injunction enjoining Michael Laing ("Laing"), Laing Holdings Corporation ("LHC"), Roberta A. Pugliese ("Pugliese") and Interactive Medical Technologies, Corp. ("Interactive") from purchasing, selling, promoting, and/or distributing gas cylinders, valves, regulators, conserving devices, fingertip pulse oximeters and other related devices  and from otherwise competing with Intermed Gas Products, LLC's business; and (b) granting such other and further relief as to this Court seems just and proper..

## FACTS

The facts and circumstances are detailed in the accompanying Declaration of Michael Milea ("Milea") and Laurie Misner ("Misner") for the Plaintiffs.  The Court is respectfully referred to Milea's Declaration (the "Milea Declaration") and Misner's Declaration (the "Misner Declaration") for a full recitation of the facts.

Intermed is a New York limited liability company.  Intermed's primary business is to arrange for the manufacture, purchase and sale of gas cylinders, valves, regulators, conserving devices, fingertip pulse oximeters and other related devices.  Through the ordinary course of business, Intermed has developed products and developed unique relationships which are now being tainted by the Defendants.  For example, Intermed's success in purchasing and reselling pulse oximeters is based on its unique relationships with suppliers and customers.  Intermed has spent considerable time and resources to design prototypes of valves and regulators, produce samples, test the production and market the valves and regulators.  Intermed also has an

exclusive agreement with a Korean company, KCR, to produce and resell cylinders. As discussed below, the Defendants are unlawfully violating agreements, breaching a fiduciary duty by competing with Intermed while still a member of Intermed, and tarnishing the good will of Intermed's name.

The 2005 Operating Agreement

On or about November 30, 2005 Intermed executed an Operating Agreement (the "2005 Operating Agreement"). The Members of Intermed in the 2005 Operating Agreement were Martell, LLC ("Martell"), LHC and W. Murray Corporation. The 2005 Operating Agreement listed the membership interest of Martell as a 1% interest, LHC as a 49.5% interest and W. Murray Corporation as a 49.5% interest. A copy of the 2005 Operating Agreement is annexed to the Milea Declaration as Exhibit "A". Among other things, Laing and LHC consented to paragraph 4.5 of the 2005 Operating Agreement (individually) not to "directly or indirectly, engage or invest in, own, manage, operate, finance, control, or participate in the ownership management, operation, financing, or control of, be employed by, associated with, or in any manner connected with, lend [his] name or any similar name to, lend their credit to, or render service or advice to, any business whose products, product development, sales, services or other activities of or offered by [Intermed]…"

The Amended Operating Agreement

On or about February 23, 2006, an Amended and Restated Operating Agreement for Intermed (the "Operating Agreement") was executed as between Martell, LLC, LHC and W. Murray Corporation. The membership interests in Intermed remained the same as the 2005

3

Operating Agreement. A copy of the Operating Agreement is annexed to the Milea Declaration as Exhibit "B". Among other things, Defendants LHC and Laing (individually) consented to paragraph 4.5 of the (amended) Operating Agreement not to engage "in any transaction competitive with the business of [Intermed]." Paragraph 4.5 applies to all members of Intermed.

The Forbearance Agreement

On or about June 28, 2007, a Forbearance Agreement was executed by and between Intermed, LHC, Laing individually, and Martell. A copy of the Forbearance Agreement is annexed to the Milea Declaration as Exhibit "C". The Forbearance Agreement transferred Martell, LLC's entire membership interest in the Company to Plaintiff 972. As a result of the Forbearance Agreement, Martell, LLC ("Martell") withdrew as a Member of Intermed. 972 is substituted for Martel as a Member, assuming all of the rights and benefits of Martell under the Operating Agreement.

At the time of the Forbearance Agreement, Intermed, LHC and Laing were in default with respect to existing agreements with Martell. The Forbearance Agreement was intended to induce Martell to forbear from taking immediate action against Intermed, LHC and Laing on account of said defaults. As a result of the Forbearance agreement, the membership interests in Intermed as of May 31, 2007 are listed as: Michael Laing individually has a 32.5% membership interest, 972 has a 57.5% membership interest and the membership interest in Intermed of "MERLIN" is 10%.

Laing and LHC's Relationship with Intermed

Defendant LHC remains a member of Intermed. Laing is, and at all relevant times was,

4

the principal and president of LHC. Additionally, Laing and LHC were consultants to Intermed until April 9, 2008. Laing and LHC were terminated from their consulting duties on or about April 9, 2008 due to, among other things, conduct damaging Intermed, such as the gross mismanagement of Intermed. The day after Laing and LHC were terminated, approximately $9,000.00 was removed from Intermed's bank account via Laing's online access. Intermed was unaware of the missing funds, and checks bounced as a result.

972 and Intermed have learned that Laing and LHC have been competing with Intermed through a closely held Florida corporation, Interactive Medical Technologies, Corp. It is believed that Interactive's business is, among other things, buying and reselling fingertip pulse oximeters. Annexed as Exhibit "D" to the Milea Declaration is an advertisement for pulse oximeteres from Interactive.

Interactive is claimed to be owned by Laing's long time intimate companion and girlfriend, defendant Roberta A. Pugliese ("Pugliese"). Interactive and Pugliese are really a front for Laing and LHC in an attempt to prevent Intermed from discovering that he is directly competing with Intermed. Pugliese is in fact a real estate broker by profession and, upon information and belief, does not have any prior experience in this industry (see Exhibit "E" annexed to the Milea Declaration). Furthermore, as late as last week Pugliese listed a property for sale indicating that she continues to work in that profession (see Exhibit "F" annexed to the Milea Declaration).

Laing appears to the public in a managerial role with Interactive. Laing has provided Interactive with names and contact information of Intermed's clients and names and contact numbers of the Intermed's suppliers, as well as assisted in the day to day operations of the Interactive. As is set forth in the Milea Declaration (¶ 23), Laing has admitted instances where

5

Intermed had a business opportunity but Laing instead gave the opportunity to Interactive. Laing and LHC stand to profit from diverting corporate opportunities from Intermed to Interactive, while Laing and LHC are still a member of Intermed. As is set forth in the Complaint (annexed to the Milea Declaration as Exhibit "G"), Laing and LHC have also, among other things, grossly mismanaged Intermed over the course of their employment and have stolen money from Intermed.

Laing and LHC's managerial positions with Interactive puts them in breach of the Operating Agreement which, as discussed *supra*, bars Laing and LHC from competing with Intermed. Furthermore, Laing and LHC are intentionally diverting business from Intermed by supplying Interactive with sensitive information such as names of clients.

## ARGUMENT

### A PRELIMINARY INJUNCTION SHOULD BE ISSUED

As this Court is well aware, a "party seeking preliminary injunctive relief must establish (a) that the injunction is necessary to prevent irreparable harm and (b) either that (i) it is likely to succeed on the merits of the underlying claim or (ii) there are sufficiently serious questions going to the merits of the claim as to make it a fair ground for litigation and that the balance of the hardships tips decidedly toward the movant." *Tom Doherty Assocs. v. Saban Entmt., Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (citations omitted). *See also Velez v. Prudential Health Care Plan of N.Y.*, 943 F. Supp. 332, 338 (S.D.N.Y. 1996).

"In the Second Circuit, the standard for a temporary restraining order is the same as for a preliminary injunction." *Smith v. Goord*, 2007 WL 2229832, at * 1 (W.D.N.Y. July 31, 2007). In determining whether a temporary restraining order or preliminary injunction should issue, the

most critical factor is the showing of irreparable harm. *See e.g., Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990); *Roso-Lino Beverage Distribs., Inc. v. Coca -Cola Bottling Co. of New York, Inc.*, 749 F.2d 124, 126 (2d Cir. 1984).

Here, Plaintiffs have established all of the criteria necessary to grant a temporary restraining order and subsequent preliminary injunction.

<u>Potential Irreparable Harm Exists</u>

It is well-settled that irreparable harm exists where, "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems. Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (internal citation omitted); *S.E.C. v. Princeton Econ. Int'l, Ltd.*, 73 F. Supp. 2d 420, 425 (S.D.N.Y. 1999). That is plainly the case here. The potential damage to the Plaintiffs' business is irreversible when its long time consultants (i.e. Laing and LHC) use the information learned from and developed by Plaintiffs to compete.

Irreparable harm exists when a business will suffer a significant loss of goodwill or reputation. *See Tom Doherty Assocs.*, 60 F.3d at 37-39 (holding that a loss of prospective goodwill can constitute irreparable harm); *Reuters Ltd.*, 903 F.2d at 908-909 (same); *Ecolab, Inc. 11- v. Paolo*, 753 F.Supp. 1100, 1110 (E.D.N.Y. 1991); *EMI Latin v. Bautista*, 2003 WL 470333, at *14 (same); *Xelus, Inc. v. Servigistics, Inc.*, 371 F.Supp.2d 387, 390 (W.D.N.Y. 2005) (same). That is also plainly the case here.

The Second Circuit has recognized that damage to business relationships is a significant harm. *See Xelus, Inc.*, 371 F.Supp.2d at 390 (citing *TVT Records v. Island Def Jam Music*, 225 F.Supp.2d 398, 405 (S.D.N.Y. 2002). In *EMI Latin*, for example, this Court enjoined a musical recording artist from interfering with EMI's rights to exploit certain recordings on an album that

7

was to be released by EMI, because its failure to release the album on the scheduled release date could result in EMI's loss of goodwill and reputation with the distributors and retail stores marketing the album. *See EMI Latin*, 2003 WL 470333, at *14.   Irreparable harm also exists where a plaintiff demonstrates an injury for which monetary damages are not adequate compensation or cannot be reasonably determined. *EMI Latin*, 2003 WL 470333, at *14. Plaintiffs have no way of calculating the monetary damages to which they would be entitled if Defendants are not enjoined from competing.

The injury stemming from the loss of consumer and retail loyalty and the damage to Plaintiffs' reputation cannot be easily quantified or adequately compensated by money damages. *See Register.com, Inc. v. Verio, Inc.*, 126 F.Supp.2d 238, 248 (S.D.N.Y. 2000) ("[n]either this Court nor the parties to this action could calculate with any precision the amount of the monetary loss which has resulted and which would result in the future from the loss of [plaintiff's] relationships with customers and co-brand partners"). Where the harm to the plaintiff is the undermining of "the confidence of present and future customers and creditors...[t]he extent of damages are incalculable." *Painewebber Inc. v. Nwogugu*, 1998 WL 545327, at *2 (S.D.N.Y. 1998).

It is well established that a party seeking injunctive relief based on a likelihood of success need not show that success is an absolute certainty. The movant "need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt." *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir.1985); *see also Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953). To the extent that Defendants' actions create an "imbalance of hardships" in favor of Plaintiffs, Plaintiffs "need not show a likelihood of success, but need only raise substantial questions going to the merits of the

8

case." *Travelers Int'l AG v. Trans World Airlines, Inc.*, 684 F. Supp. 1206, 1216 (S.D.N.Y.

1986); *Roso-Lino Beverage. Distribs., Inc.*, 749 F.2d at 127.

Pugliese and Interactive Must be Enjoined

Pugliese and Interactive are simply "fronts" for Laing and LHC's violations of the

Operating Agreement and unlawful behavior.  The Southern District has ruled that where parties

are simply acting as fronts for defendants acting unlawfully it is proper to enjoin not only the

defendants but also those acting in concert with them. *See Canadian Javelin Ltd. v. Brooks*, 462

F.Supp. 190 (S.D.N.Y. 1978).  Pugliese and Interactive must also be enjoined from purchasing,

selling, promoting, and/or distributing gas cylinders, valves, regulators, conserving devices,

fingertip pulse oximeters and other related devices  and from otherwise competing with

Intermed's business.

## CONCLUSION

PLAINTIFFS HAVE SHOWN THAT POTENTIAL IRREPARABLE HARM EXISTS

TO GRANT A PRELIMINARY INJUNCTION.

Dated: New York, New York
       June 2, 2008

GOLDBERG & RIMBERG, PLLC

By: _____
Robert L. Rimberg (RLR2453)
Joel S. Schneck (JSS7019)
Attorneys for Plaintiffs
115 Broadway, 3rd Floor
New York, New York 10006
(212) 697-3250

Docket #: 1:08-cv-04907-RPP

UNITES STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

972 IRREVOCABLE TRUST and
INTERMED GAS PRODUCTS LLC.,

Plaintiffs,

-against-

MICHAEL LAING, ROBERTA PUGLIESE,
LAING HOLDINGS CORPORATION and
INTERACTIVE MEDICAL TECHNOLOGIES, CORP.

Defendants.

-------------------------------------------------------------------X

# MEMORANDUM OF LAW IN
# SUPPORT OF ORDER TO SHOW CAUSE

**GOLDBERG & RIMBERG, PLLC**
**Attorneys for Plaintiffs**
**115 Broadway- 3rd Floor**
**New York, New York 10006**
**(212) 697-3250**