UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

972 IRREVOCABLE TRUST and
INTERMED GAS PRODUCTS, LLC,

        Plaintiffs

v.

MICHAEL LAING, ROBERTA PUGLIESE,
LAING HOLDINGS CORPORATION and
INTERACTIVE MEDICAL TECHNOLGIES, CORP.
        Defendants.

Case No.: 08-CIV-4907 RPP-HP
ECF CASE

---

### DEFENDANTS' EMERGENCY MOTION TO CONTINUE ORDER TO SHOW CAUSE HEARING SCHEDULED FOR JUNE 17, 2008 SO AS TO BE ABLE TO CONDUCT EXPEDITED DISCOVERY PRIOR TO SAME WITH MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendants, MICHAEL LAING (hereinafter referred to as "LAING"), ROBERTA PUGLIESE (hereinafter referred to as "PUGLIESE"), LAING HOLDINGS CORPORATION (hereinafter referred to as "LHC"), INTERACTIVE MEDICAL TECHNOLGOIES, CORP. (hereinafter referred to as "IMT")(collectively hereinafter referred to as "Defendants"), by and through their undersigned counsel, and pursuant to the applicable Federal Rules of Civil Procedure, hereby serve their Emergency Motion to Continue Order to Show Cause Hearing scheduled for June 17, 2008 So As to be Able to Conduct Expedited Discovery Prior to Same with Memorandum of Law in Support Thereof and states as follows:

### I.    PROCEDURAL POSTURE

On April 16, 2008, Plaintiffs filed their Complaint ("the Complaint") in the Supreme Court of the State of New York, New York County for two counts for Breach of Contract, Breach of Fiduciary Duty, an Accounting, two counts for Conversion, Embezzlement, Wasting Corporate

Opportunity, Intentional Interference with Business Relationships and Negligence. On April 28, 2008 Defendants' were served with a copy of the Complaint. On May 28, 2008, Defendants filed a Notice of Removal in this Court removing said case from the Supreme Court of the State of New York, New York County. On the same day, Defendants' filed a Notice of Filing of Notice of Removal in the Supreme Court of the State of New York, New York County. On June 3, 2008 Defendants

On June 3, 2008, Plaintiffs filed a Memorandum of Law in Support of an Order to Show Cause, Declarations of Michael Milea and Laurie Misner and a Supplemental Declaration of Joel Schneck in Support of an Order to Show Cause. On the same day, this Court entered an Order to Show Cause scheduling a hearing for June 17, 2008 at 9:30pm for Defendants to show cause why a preliminary injunction/temporary restraining order should not be entered against them. Lastly, on June 3, 2008, Defendants filed Motions to Dismiss Plaintiffs' Complaint in Part or in the Alternative, Motion to Transfer Venue to Southern District of Florida and a Motion to Disqualify Robert L. Rimberg and Goldberg & Rimberg, PLLC from Representing Plaintiffs with Memorandums of Law in Support Thereof.

## II. FACTS, ARGUMENT & MEMORANDUM OF LAW

Plaintiffs' filed a multi-count Complaint on April 16, 2008 in the Supreme Court of the State of New York, New York County with no prayer for injunctive relief nor even makes a claim that any conduct by Defendants is causing Plaintiffs' irreparable harm. At the time the Complaint was filed, no motion for injunctive relief accompanied same. Plaintiffs obviously believed that they had an adequate remedy law as they sought specified money damages for each count with the exception of the count for an accounting. Indeed, their amount of damages requested for the various counts ranged from $9,000.00 to $5,000,000.00.

On April 28, 2008 Defendants were served with a copy of Plaintiffs' Complaint and on May 28, 2008 undersigned counsel filed a Notice of Removal to this Court. Between April 16, 2008 and May 28, 2008 counsel for Plaintiffs' and an attorney representing Defendants were in constant dialogue regarding a potential resolution thereto. It is undersigned counsel's understanding that "no cease and desist" was ever communicated by Plaintiffs' counsel to counsel who was representing the Defendants in those discussions. In fact, <u>the day before</u> undersigned counsel filed the Notice of Removal, Plaintiffs' counsel had a conversation with counsel who was representing Defendants in settlement discussions wherein he urged Defendants not to file anything that he would agree to an enlargement of time for Defendants to respond.

The day after undersigned counsel filed a Notice of Removal, undersigned counsel received a telephone call from Plaintiffs' firm indicating that they were seeking the issuance of an Order to Show Cause and on June 3, 2008, this Court entered an Order to Show Cause wherein a hearing was scheduled for June 17, 2008 for Defendants to show cause why a preliminary injunction/temporary restraining order should not be entered against them. It is respectfully submitted that based upon the above recitation of facts, Plaintiff has not shown the requisite urgency to have an expedited hearing on the relief requested.

Moreover, Defendants' respectfully submit that it would cause them unfair prejudice to have to travel to New York to attend said hearing without some time to conduct expedited discovery so as to be able to provide the Court with a balanced view of the applicable facts. The Federal Rules of Civil Procedure specifically provide that parties may obtain expedited discovery "when authorized ....by [court] order." Fed. R. Civ. P.26(d). Courts ordinarily grant such discovery when preliminary injunctions are pending. <u>See, e.g., Yokoham Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612 (D. Ariz. 2001)</u> ("Expedited discovery has been ordered where

it would better enable the Court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing.")

In the instant case, conducting discovery before the Evidentiary Hearing is conducted would enable the Defendants to present the Court with a more complete picture of the dispute that lead to the filing of this lawsuit and could allow a more immediate resolution of the issues therein. The discovery Defendants' seek is two fold. They intend to seek discovery from Plaintiffs' that substantiate their contention that they are entitled to injunctive relief. Second and more crucial as it pertains to the Order to Show Cause Hearing, the documents that Defendants require in order to be able illustrate to the Court that a preliminary injunction/temporary restraining order is not appropriate are completely within the Plaintiffs' control. These documents include, but are not limited to Plaintiffs' financial documents, business documents, loan documents, bank statements, correspondence (including emails), etc. An example of wherein Defendant Michael Laing (President of Laing Holdings Corporation, who is a member of Plaintiffs') was denied his request for these type of documents by the managing member of Plaintiffs is attached hereto as Exhibit "A".

Absent the time to conduct expedited discovery, Defendants will be hampered in their ability to fully respond to the evidence presented at the Order to Show Cause Hearing.

WHEREFORE, it is respectfully requested that this Court grant Defendants Emergency Motion to Continue Order to Show Cause Hearing scheduled for June 17, 2008 So As to be Able to Conduct Expedited Discovery Prior to Same with Memorandum of Law in Support Thereof and for any other relief this Court deems just and proper.

Dated June 6, 2008

                                                                s/ Jeffrey M. Glotzer
Jeffrey M. Glotzer (Attorney Bar Code # JG2620)
Email: Jeff@jeffglotzerlaw.com

JEFFREY M. GLOTZER, P.A.
6111 Broken Sound Pkwy, NW, Suite 330
Boca Raton, Florida 33487
Telephone :   (561)443-1994
Facsimile:    (561)431-3104
*Attorney for Defendants*

Case 1:08-cv-04907-RPP   Document 22   Filed 06/06/2008   Page 5 of 5

JEFFREY M. GLOTZER, P.A.
6111 Broken Sound Pkwy, NW, Suite 330
Boca Raton, Florida 33487
Telephone :   (561)443-1994
Facsimile:    (561)431-3104
*Attorney for Defendants*

```
                                                    New York, NY 10022
                                                    Tel: 212-533-2312
mmilea@martellstrategicfunding.com                  Fax: 212-533-4439
Add me to your address book...    Want a signature like this?
```

**From:** Intermedgp@aol.com [mailto:Intermedgp@aol.com]
**Sent:** Saturday, February 16, 2008 10:21 AM
**To:** mmilea@martellstrategicfunding.com
**Subject:** Re: House Keeping

Michael,

I finally received my documents from Joe and I was very shocked to see that these documents were not witnessed, rendering them useless. I have being asking for about three years for my original documents and can't believe that this is what was sent. Joe indicated that he was not in possession any of the original witnessed documents and that they would be held by yourself, Ken Rubinstein or Andrew. Could you please see to it that I receive original witnessed documents ASAP.

It is understandable that nothing can be done with my Consultation Agreement until Andrew gets back in town. I have asked for this to be done several times without acknowledgement, which is upsetting, as this is very important to me. I would suggest that when Andrew is available, this matter should be addressed, allowing us to come to an agreement before our meeting on the 27th or 28th of February and closed at the meeting.

I am also at a loss when it comes to understanding the accounting relating to the investment of the alleged $5 - $6 Million Dollars. At the last meeting in New York I was asked directly, if "I knew the value of the investments and if I understood where these funds went" and I could not honestly answer with any accuracy. I could not respond as you fully know, because I was not privy to the activities in Signature Bank, nor do I have copies of any agreements with our investors. All investment dollars, as well as funds received from the factoring were run through Signature Bank in New York, controlled by you. Our office never had any detailed records from the Signature account, therefore our office could not reconcile or give any comments accurately on the activities of this account. As President and major shareholder I must have complete details of the handling of these funds, as this is unacceptable. Without this information, I agree that our investors or any outsider including an IRS audit would cause me to look suspect as President of InterMed Gas Products, LLC and I will not be put in this position. Please make sure that I have this information in my hands before the meeting at the end of February, so we can avoid a recurrence of a very embarrassing situation.

I understand you are a very busy person, but I do not appreciate that every time I speak to you about these matters, I am overridden by your shortness of time to take care of these matters.

You know my intentions are only to make a success of Intermed and I thank you for your cooperation in these matters,

Michael

---

The year's hottest artists on the red carpet at the Grammy Awards. AOL Music takes you there.

**EXHIBIT "A"**

Tuesday, February 19, 2008 America Online: PARKCOMISH

Subj: **Fwd: House Keeping**
Date: 2/19/2008 6:54:58 AM Pacific Standard Time
From: Intermedgp
To: PARKCOMISH

Here is the email from Michael.

Delicious ideas to please the pickiest eaters. Watch the video on AOL Living.

---

Forwarded Message:
Subj: **RE: House Keeping**
Date: 2/18/2008 2:26:00 PM Pacific Standard Time
From: mmilea@martellstrategicfunding.com
To: Intermedgp@aol.com
*Sent from the Internet (Details)*

Michael,

I have no idea what documents you are talking about. However, whatever documents you are referring to I'm sure you can get from the Trust. You signed off on many documents and I don't understand how it is that you don't remember what you signed and didn't keep copies.

I understand your consulting agreement is important to you. However, Ken and Andrew have been traveling at different times and as you know Andrew is on vacation until next week. I'm sure they'll address the matter when he returns.

As for the financial records relating to the investment of $5million+, you should have complete and precise knowledge of where the money went. After all, the investor money initially sent to Signature and Merchants banks, was wired into the B of A IGP bank account for working capital where you are the only signatory and expended funds in your discretion, or went to purchase inventory as to which you issued the Purchase Orders and instructed payment amounts, All sales proceeds received from customers were paid into the IGP account (where you are the sole signatory) or paid to the factor who sent you daily notification. You signed all the promissory notes to the investors and therefore should know exactly how much and when the investments came in and on what terms.

Thus all of the relevant records of the amount and use of investment funds have always been in your control and knowledge, so indeed, you should know exactly how the money was spent. If necessary we can discuss this further at our meeting next week (2/27th subject to Andrew's availability).

Lastly, Michael, it is not my busyness or any other external factor that has put you in whatever position you perceive you are in; it is your failure to have kept good records and to review information that has been given to you which are clearly your responsibility as President.

P.S.: Rimberg is expecting you to bring to our meeting a copy of the life insurance policy he requested at our last meeting.

| | |
|---|---|
| **Michael Milea**<br>*Managing Member* | Martell Global Properties, LLC<br>Martell Strategic Funding, LLC<br>Martell Global Commodities, LLC<br>501 Madison Avenue, 14th Floor |

Tuesday, February 19, 2008 America Online: PARKCOMISH