Robert L. Rimberg, Esq. (RLR2453)
Joel S. Schneck, Esq. (JSS7019)
GOLDBERG & RIMBERG, PLLC
115 Broadway – 3rd Floor
New York, New York 10006
Phone: (212)697-3250
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
972 IRREVOCABLE TRUST and
INTERMED GAS PRODUCTS, LLC.                    Docket No.  1:08-cv-04907-RPP

                    Plaintiffs,

        -against-

MICHAEL LAING, ROBERTA A.
PUGLIESE, LAING HOLDINGS
CORPORATION and INTERACTIVE
MEDICAL TECHNOLOGIES, CORP.,

                    Defendants.
-------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO
DISMISS PLAINTIFFS' AMENDED COMPLAINT IN PART OR IN THE
ALTERNATIVE, MOTION TO TRANSFER VENUE TO SOUTHERN DISTRICT OF
FLORIDA**

PRELIMINARY STATEMENT ................................................................................2

ARGUMENT........................................................................................... 2

I.    Plaintiffs' Amended Complaint Should Not Be Dismissed as to Defendants Pugliese and
      IMT For Lack of Personal Jurisdiction...........................................................2

II.   Plaintiffs' Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, Eleventh, Twelfth,
      Thirteenth and Fourteenth Causes of Action Should Not Be Dismissed as to Laing and
      LHC for Lack of Personal Jurisdiction...........................................................4

III.  The Fourth, Fifth, Tenth, Eleventh and Twelfth Causes of Action in Plaintiffs' Amended
      Complaint Should Not Be Dismissed for Failure To State A Claim.........................7

           A. Fourth Cause of Action – Accounting..............................................8

           B. Fifth Cause of Action – Conversion................................................8

           C. Tenth Cause of Action – Negligence...............................................9

           D. Eleventh Cause of Action – Fraud.................................................10

           E. Twelfth Cause of Action – Unfair Competition....................................11

IV.   The Eighth and Sixteenth Causes of Action in Plaintiffs' Amended Complaint
      Sufficiently State Valid Claims...................................................................12
V.
           A. Eighth Cause of Action – Intentional Interference with Business Relationships..12

           B. Sixteenth Cause of Action – Aiding and Abetting Conversion......................13

VI.   Plaintiffs' Complaint Against All Defendants Should Not Be Dismissed As It Pertains to
      Claims Made By Plaintiff 972 Irrevocable Trust...............................................13

VII.  Proper Venue Does Lie with the Southern District of New York..........................13

CONCLUSION............................................................................................15

## Table of Authorities

### Cases

*Amfesco Industries, Inc. v. Greenblatt*, 172 A.D.2d 261, 568 N.Y.S.2d 593 (1st Dept 1991)...... 11

*Daventree Ltd. v. Republic of Azerbaijan*, 349 F.Supp.2d 736 (S.D.N.Y. 2004)........................... 4

*Dayan Enterprises Corp. v. Nautica Apparel Inc.*, 203 WL 22832706 (S.D.N.Y. 2003) .............. 8

*Finance One Public Co. Ltd. v. Lehman Bros. Special Fin. Inc.*, 414 F.3d 325 (2d Cir. 2005)..... 5

*Hernandez v. Coughlin*, 18 F.3d 133 (2d Cir.1994), *cert. denied*, 513 U.S. 836, 115 S.Ct. 117 (1994)................................................................................................................................................ 8

*Higgins v. New York Stock Exchange, Inc.*, 10 Misc.3d 257, 806 N.Y.S.2d 339 (Sup. Ct. NY Co., 2005). ....................................................................................................................................... 11

*Hoffritz for Cutlery, Inc., v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985). ........................................ 3

*Independent Asset Management LLC v. Zanger*, 538 F.Supp.2d 704 (S.D.N.Y. 2008) ............... 13

*International Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, 475 F.Supp.2d 450 (S.D.N.Y. 2007), .................................................................................................................... 5, 6

*Lehigh Valley Industries, Inc. v. Birenbaum*, 389 F.Supp. 798 (S.D.N.Y. 1975)........................... 4

*Lurie v. Norwegian Cruise Lines, Ltd.*, 305 F.Supp.2d 352 (S.D.N.Y. 2004)................................ 5

*Optimum Worldwide Ltd. v. Klebener*, 1996 WL 71500 (S.D.N.Y. 1996)...................................... 3

*Ross v. DeLorenzo*, 813 N.Y.S.2d 756 (2nd Dept 2006) ............................................................. 11

*RSL Communications PLC ex rel. Jervis v. Bildirici*, 2006 WL 2689869 (S.D.N.Y. 2006)........ 10

*Ruder & Finn, Inc. v. Seaboard Surey Co.*, 52 N.Y.S.2d 858 (1981) ......................................... 12

*Sierra Rutile Ltd. v. Katz*, 1992 WL 236208 (S.D.N.Y. 1992)................................................. 8, 12

*Tzolis v. Wolff*, 12 Misc.3d 1151, 819 N.Y.S.2d 852 (Sup. Ct. NY Co., 2006) ............................ 9

*Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375 (2d Cir. 1995)........................................ 8, 10

### Statutes

NY CPLR § 302................................................................................................................................ 2, 3

## PRELIMINARY STATEMENT

Plaintiffs 972 Irrevocable Trust ("972") and Intermed Gas Products, LLC ("Intermed") (collectively referred to as the "Plaintiffs") submit this Memorandum of Law in opposition to Defendants Michael Laing ("Laing"), Roberta Pugliese ("Pugliese"), Laing Holdings Corporation ("LHC") and Interactive Medical Technologies, Corp. ("IMT") (collectively referred to as "Defendants") motion to dismiss Plaintiffs' Amended Complaint (the "Complaint") in part or in the alternative, motion to transfer venue to the Southern District of Florida. (A copy of the Complaint is annexed to the Declaration of Joel S. Schneck as **Exhibit "A"**.) As is demonstrated below, Defendants' motion is completely without merit.

## ARGUMENT

**I.    Plaintiffs' Amended Complaint Should Not Be Dismissed as to Defendants Pugliese and IMT For Lack of Personal Jurisdiction**

Defendants' assertion that this Court does not have jurisdiction over Pugliese and IMT is without merit. In deciding a motion for dismissal pursuant to FRCP 12(b)(2), the Court must construe all pleadings and affidavits in a light most favorable to Plaintiffs. *Hoffritz for Cutlery, Inc., v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985). "In a motion to dismiss under Rule 12(b)(2), where no discovery has taken place, a plaintiff need only make out a *prima facie* case for jurisdiction through pleadings and affidavits." *Optimum Worldwide Ltd. v. Klebener*, 1996 WL 71500 (S.D.N.Y. 1996).

Defendants are incorrect in asserting that New York's long-arm statute, CPLR § 302, does not apply. Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Amended Complaint in Part or in the Alternative, Motion to Transfer Venue to Southern District of Florida (hereinafter referred to as "Defendants' MOL"), p. 4.

2

CPLR § 302(a)(3)(ii), the applicable provision of New York's long-arm statute, provides that a Court obtains personal jurisdiction over a defendant when (1) a non-domiciliary or his agent commits a tortious act outside of New York which causes injury within New York and the non-domiciliary expects or should reasonably expect the act to have consequences within the state and the non-domiciliary derives substantial revenue from interstate or international commerce. "The acts of a co-conspirator may be attributed to a defendant... for purposes of obtaining personal jurisdiction over that defendant under the long-arm statute." *Lehigh Valley Industries, Inc. v. Birenbaum*, 389 F.Supp. 798 (S.D.N.Y. 1975), *Daventree Ltd. v. Republic of Azerbaijan*, 349 F.Supp.2d 736 (S.D.N.Y. 2004).

Plaintiffs allege in their Tenth Cause of Action that Pugliese and IMT conspired with Laing and LHC to commit tortious acts, including fraud and conversion. Defendants do not argue that the cause of action for conspiracy fails to state a cause of action. Laing and LHC, having committed tortious acts that caused injury in New York, are subject to New York's long-arm statute. Complaint, ¶ 8. Therefore, this Court has personal jurisdiction over Laing and LHC's co-conspirators, Pugliese and IMT.

Pugliese and IMT are nominees of Laing and LHC in committing the wrongful acts alleged in Third Cause of Action. Pugliese and IMT are essentially acting as the alter ego of Laing and LHC, in an attempt to intentionally damage Plaintiffs. This situation is certainly one in which the torts of Pugliese and IMT, as co-conspirators of Laing and LHC, must be attributed to them.

**II.    Plaintiffs' Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, Eleventh, Twelfth, Thirteenth and Fourteenth Causes of Action Should Not Be Dismissed as to Laing and LHC for Lack of Personal Jurisdiction**

Defendants contend that the Operating Agreement entered into by Laing and LHC, in which Laing and LHC expressly consent to the exclusive jurisdiction of the Courts of New York, does not apply to the "third, fourth, fifth, sixth, seventh, ninth, tenth,[1] eleventh, twelfth, thirteenth and fourteenth causes of actions." Defendants' MOL, p. 5. Defendants' argument fails and, as demonstrated below, is frivolous. "It is well settled that forum selection clauses may encompass claims beyond breach of the contract containing the clause, including tort claims." *Lurie v. Norwegian Cruise Lines, Ltd.*, 305 F.Supp.2d 352 (S.D.N.Y. 2004). Defendants' conclusory statement that "none of [the claims] arise out of or are based upon the Operating Agreement or the transactions contemplated thereby" is patently false.

The Second Circuit ruled in *Finance One Public Co. Ltd. v. Lehman Bros. Special Fin. Inc.*, 414 F.3d 325 (2d Cir. 2005) where a contract containing a clause stating the governing terms of an agreement and any action "relating to this Agreement," applies more broadly than just the contractual claims. Here too, the Operating Agreement includes "any suit, action or proceeding related to this agreement or any of the matter contemplated thereby." Operating Agreement, ¶ 12.4.

In *International Equity Investments, Inc.. v. Opportunity Equity Partners Ltd.*, 475 F.Supp.2d 450 (S.D.N.Y. 2007), the Court ruled on a motion to dismiss that when an Operating Agreement provides for jurisdiction for claims based on an agreement or the "transactions contemplated thereby" it will include claims for, *inter alia*, conversion and breach of fiduciary duty, because the tort claims depend on the contractual relationship set forth in the Operating

---

[1] It should be noted that the tenth cause of action is for Civil Conspiracy and is alleged only against Pugliese and IMT.

Agreement. The *International Equity Investements, Inc.* court noted that the defendants therein were not only in the positions that they abused because of their contractual relationship "but the measure of the propriety of their actions includes, among other things, the scope of their obligations by reason of the [Operating Agreement]."

Laing, who was admittedly the CEO and a shareholder of Intermed during all relevant times (*see* Dec. of Laing, annexed as Exhibit "B" to Defendants' motion.), and LHC, the managing member of Intermed (Dec. of Laing, ¶ 1) had contractual duties and obligations to Intermed. Each claim alleged against Laing and LHC is anticipated in the Operating Agreement because they were only in a position to commit such torts due to their contractual relationship with the Plaintiffs:

    a) Plaintiffs' Third Cause of Action, Breach of Fiduciary Duty, is reliant on Defendants Laing and LHC's contractual relationship to the Plaintiffs, in that Laing and LHC's fiduciary duty is created by way of the Operating Agreement. *International Equity Investements, supra.*

    b) Plaintiffs' Fourth Cause of Action for an accounting is based on the Operating Agreement because it seeks the accounting of the monies belonging to Intermed that went missing while Laing and LHC maintained their positions created and formed by the Operating Agreement. Complaint, pp. 13, 14.

    c) Plaintiff's Fifth and Sixth causes of action for conversion are premised on Laing and LHC's contractual relationship with the Plaintiffs. *International Equity Investements, supra.*

    d) Plaintiffs' Seventh Cause of Action, Wasting Corporate Opportunities, is premised upon Laing and LHC's improprieties with respect to the information

obtained by Laing and LHC while in their contractual positions with Intermed. Complaint, p. 16.

e) The Ninth Cause of Action as against Laing and LHC for negligence is specifically relevant to Laing and LHC's duties resulting from their contractual relationship with the Plaintiffs.  Complaint, pp. 17, 18.

f) Plaintiffs' Eleventh Cause of Action[2] for fraud is specifically related to representations made by Laing and LHC prior to the parties entering into the Operating Agreement.  Complaint, pp. 19, 20.

g) Defendants objection to Plaintiffs' Twelfth Cause of Action for Unfair Competition is frivolous from the start.  The Amended Complaint explicitly alleges in paragraph 170 that the claim for Unfair Competition is based upon Laing and LHC's breach of the Operating Agreement.

h) Plaintiff's Thirteenth Cause of Action for a permanent injunction is also explicitly based upon Defendants' blatant breach of the Operating Agreement.  Complaint, p. 21.

i) Plaintiff's fourteenth cause of action for misappropriation of trade secrets is based upon the information learned by Laing and LHC through their contractual relationship with the Plaintiffs.  Complaint, pp. 21, 22.

Each and every claim alleged against Laing and LHC is related to the Operating Agreement and/or the transactions contemplated by the contractual relationships formed thereby.

---

[2] Defendants erroneously include the tenth cause of action as against Laing and LHC.

### III. The Fourth, Fifth, Tenth, Eleventh and Twelfth Causes of Action in Plaintiffs' Amended Complaint Should Not Be Dismissed for Failure To State A Claim

Defendants' motion to dismiss for failure to state a claim should only be granted "if it appears beyond doubt" that the Plaintiffs cannot prove a set of facts in support of its claims that would entitle Plaintiffs to the relief set forth. *Sierra Rutile Ltd. v. Katz*, 1992 WL 236208 (S.D.N.Y. 1992). In reviewing a motion to dismiss for failure to state a claim, the Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Coughlin*, 18 F.3d 133 (2d Cir.1994), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117 (1994). The review of such a motion is limited, and "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v, Town of Darien*, 56 F.3d 375 (2d Cir. 1995) (citations omitted).

#### A. Fourth Cause of Action – Accounting

Defendants do not argue that Plaintiffs fail to adequately plead a claim for an accounting, rather only arguing that there is no need for one. Defendants' MOL, p. 7. Defendants rely upon *Dayan Enterprises Corp. v. Nautica Apparel Inc.*, 203 WL 22832706 (S.D.N.Y. 2003)("Dayan") to rebut Plaintiffs' claim for an accounting.

In *Dayan*, the defendant failed to establish a fiduciary duty between the parties in its counterclaim allegations for an accounting. Defendants in this case cite *Dayan*, but in an attempt to mislead this Court neglect to cite the words following the quotation. Defendants state that the *Dayan* court notes "Nautica alleges Dayan's royalty and advertising obligations arise out of the license agreement itself. Thus, a damages suit for breach of contract suit provides an adequate legal remedy." **Defendants neglect to include** "*See, Arnold Productions, Inc. v. Favorite Films Corp.,* 298 F.2d 540, 542-32 (2d Cir.1962) (accounting improper **absent a fiduciary**

7

**relationship** and because plaintiff could discover "by means of familiar discovery devices" any information it needed to establish damages for its breach of contract claim)"(emphasis added). The *Arnold* Court held that the plaintiffs therein were not entitled to an accounting because there was no fiduciary relationship and they would have obtain the information request through discovery.

In this case there is a fiduciary relationship between Plaintiffs and Laing and LHC and it is not comparable to case-law cited by the Defendants. As demonstrated by the Declaration of Laing, LHC was the managing member of Intermed and Laing was its C.E.O. "Managing members have statutory and common-law fiduciary duties to the members of the company." *Tzolis v. Wolff*, 12 Misc.3d 1151, 819 N.Y.S.2d 852 (Sup. Ct. NY Co., 2006). Likewise, a C.E.O. has a fiduciary duty towards a company. *See, Bensen v. American Ultramar Ltd.*, 1996 WL 48601 (S.D.N.Y. 1996).

Defendants further demonstrate the need for an accounting in noting that Plaintiffs complaint states with particularity the **minimum** amount of damages they are seeking for each claim. Certainly if the Defendants were aware of the exact sum certain to which they have been damaged there would be no need for an accounting. Defendants' argument against an accounting is therefore without merit.

   **B. Fifth Cause of Action – Conversion**

Defendants' allegation that the Complaint fails to state a cause of action for conversion is notoriously without merit. Defendants allege that Plaintiff makes no claim that the "customer lists and documents" contain confidential information, are proprietary or may constitute a trade secret. Defendants' MOL, p. 8. The Court is respectfully directed to paragraph 108 of the Amended Complaint which states "The customer files and/or documents contain proprietary

8

information, are confidential and/or contain trade secrets." Defendants assertion that Plaintiffs must allege conversion of a "specific identifiable piece of property" with regards to customer files, documents and the Company's inventory ignores the facts alleged in the Amended Complaint. The Complaint adequately identifies the things claimed to be converted. In opposition to a motion to dismiss, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v, Town of Darien*, *supra*.

Defendants' contention that Plaintiffs fail to adequately identify the business opportunities converted by Laing and LHC is also meritless. The Court is respectfully directed to paragraph 45 of the Amended Complaint, which states "Laing and/or LHC have and continue to, among other things, provide names and contact information of Intermed's clients and provide names and contact numbers of Intermed's suppliers and vendors to Pugliese and/or Interactive in violation of agreement." Paragraph 70 states in relevant part: "following Laing and LHC's termination, Laing has contacted Intermed's current customers, potential customers and/or suppliers, all from information obtained while employed by Intermed." Further, paragraph 72 states, "Upon information and belief, the purpose of such communications was and is to divert business to Laing, LHC and/or Interactive." Clearly Plaintiffs have identified the business opportunities converted by Laing and LHC.

### C. Tenth Cause of Action – Negligence

Plaintiffs' Tenth Cause of Action is for civil conspiracy against Pugliese and IMT. Defendants, in moving to dismiss Plaintiffs' claim for negligence, must be referring to Plaintiff's Ninth claim. Defendants assert that the business judgment rule is applicable in this case and therefore Plaintiffs are precluded from pleading negligence. The business judgment may be

9

raised as an absolute defense to bar judicial inquiry into the actions of corporate directors.  *RSL Communications PLC ex rel. Jervis v. Bildirici*, 2006 WL 2689869 (S.D.N.Y. 2006).  It is initially noted that "pre-discovery dismissal of pleadings in the name of the business judgment rule is inappropriate" and is more apt for a summary judgment motion.  *Higgins v. New York Stock Exchange, Inc.*, 10 Misc.3d 257, 806 N.Y.S.2d 339 (Sup. Ct. NY Co., 2005).

The business judgment rule may not be invoked to protect a director where a complaint alleges bad faith, conflict of interest or fraud.  *Amfesco Industries, Inc. v. Greenblatt*, 172 A.D.2d 261, 568 N.Y.S.2d 593 (1st Dept 1991)(citing *Auerbach v. Bennet*, 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979)).  Not only is there an entire claim for fraud in the Amended Complaint but paragraph 145 alleges "Laing and LHC acted in bad faith."  The Amended Complaint also alleges self dealing (¶148), that "no persona of ordinary sound business judgment would say Intermed received fair benefit" of Laing and LHC's actions (¶149) and that Laing and LHC used Intermed's good name to compete with Intermed (¶147).  As the factual allegations must be accepted as true for the purpose of the instant motion to dismiss, the business judgment rule may not be invoked to defeat Plaintiffs' claims.

### D.  Eleventh Cause of Action – Fraud

Defendants conclusory assertion that Plaintiffs' claim for fraud relies solely on allegations of a breach of contract is inaccurate.[3]  It is clear from the allegations in the Eleventh Cause of Action that Laing and LHC's fraud involves circumstances when entering into the Operating Agreement and not the actual breach of contract.  In citing to *Ross v. DeLorenzo*, 813

---

[3] It should be noted that Defendants' argue that this Court must dismiss Plaintiffs' cause of action for fraud for lack of personal jurisdiction because the contractual consent to jurisdiction does not include unrelated tort claims but now argue that the fraud relates to a breach of the contract.  Defendants want to have it both ways, however contradictory; when in fact both of such arguments lack merit.

10

N.Y.S.2d 756 (2nd Dept. 2006), Defendants fail to cite the relevant precedent: "a misrepresentation of material fact, which is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud" (citations omitted). The Amended Complaint alleges that Laing and LHC were actively competing with Intermed at the time they entered into the Operating Agreement (¶161), intended not to abide by the terms of the Operating Agreement (¶162), misrepresented their intention to abide by the terms of the Operating Agreement (¶163), and made said misrepresentations to induce Plaintiffs to operate Intermed to Defendants' benefit (¶164). Nowhere in their claim for fraud do Plaintiffs allege that they were damaged due to Defendants' actual breach of contract. Based on *Ross*, Plaintiffs' claim for fraud clearly states a cause of action.

### E. Twelfth Cause of Action – Unfair Competition

Defendants claim that Plaintiff has failed to state a cause of action for unfair competition because the Complaint fails to state what property was misappropriated. Defendants' fail to argue that such information must be pleaded with particularity. A motion to dismiss for failure to state a cause of action may only be granted if granted "if it appears beyond doubt" that the Plaintiffs cannot prove a set of facts in support of its claims that would entitle Plaintiffs to the relief set forth. *Sierra Rutile Ltd. v. Katz*, *supra*. Plaintiffs identify a "misappropriation," an item upon which Defendants seem to dwell, in paragraph 171 of the Amended Complaint ("Laing and LHC have competed with Intermed in bad faith, misappropriating a commercial advantage which belonged exclusively to Intermed"). Defendants' own parenthetical to *Ruder & Finn, Inc. v. Seaboard Surey Co.,* 52 N.Y.S.2d 858 (1981) noting "the principle of misappropriation of another's commercial advantage as a cornerstone of the tort", further substantiates that the Amended Complaint sufficiently alleges a claim for unfair competition.

11

Defendants note that there must be an actual showing of bad faith before monetary damages can be awarded. Again, paragraph 171 of the Amended Complaint explicitly alleges that Defendants have acted in bad faith.

**IV.    The Eighth and Sixteenth Causes of Action**
**in Plaintiffs' Amended Complaint Sufficiently State Valid Claims**

### A.    Eighth Cause of Action – Intentional Interference with Business Relationships

Defendants claim that Plaintiffs fail to state a cause of action for Intentional Interference with Business Relationships. The Defendants erroneously direct the Court to paragraphs 115 and 116 of the Complaint to demonstrate that Plaintiffs make conclusory allegations relating to the eighth cause of action. However paragraphs 115 and 116 are part of the sixth cause of action for conversion as against Laing and LHC.

Defendants also try to mislead the Court into believing that Plaintiffs do not allege that Pugliese and/or IMT had knowledge of the existence of the Operating Agreement. The Court is respectfully referred to paragraph 131 of the Amended Complaint, which states "Pugliese and Intermed (sic) are aware of Laing and LHC's obligations under the Operating Agreement." It would appear that Defendants have filed the instant motion without bothering to read through the Amended Complaint they seek to dismiss.

Defendants' last bite of the apple is their claim that Plaintiffs do not allege that Pugliese and/or IMT had "an intention to harm Plaintiff without economic or other lawful excuse or justification." An example provided by the *Independent Asset Management LLC v. Zanger* Court, to which Defendants boldly compare this case, is that the plaintiff does not "alleges facts that would show that [the defendant] engaged in the complained-of conduct for the purpose of causing [a third party] to breach its contract with [the plaintiff]." 538 F.Supp.2d 704 (S.D.N.Y.

12

2008). In this case, Plaintiffs do allege that the intentional acts by Pugliese and IMT harm the Plaintiffs ("As a result of the foregoing, Plaintiff has been damaged by Pugliese and Interactive's intentional and wrongful acts preventing Defendant Laing from complying with the operating agreement" (¶132)). Defendants' argument fails again.

### B. Sixteenth Cause of Action – Aiding and Abetting Conversion

Defendants only argument to strike the Sixteenth Cause of Action is that because the Fifth Cause of Action fails, so to should the Sixteenth. As is demonstrated above, the Fifth cause of action does not fail. Defendants allege that Plaintiff makes no claim that the "customer lists and documents" contain confidential information, are proprietary or may constitute a trade secret but paragraph 108 of the Amended Complaint states "The customer files and/or documents contain proprietary information, are confidential and/or contain trade secrets." The Defendants clear failure to read the Fifth Cause of Action of the Amended Complaint, as is demonstrated above, is not grounds to strike two causes of action.

### V. Plaintiffs' Complaint Against All Defendants Should Not Be Dismissed As It Pertains to Claims Made By Plaintiff 972 Irrevocable Trust

Defendants do not contest that Plaintiff 972 is the majority member of Intermed. Defendants improper acts, as alleged in the Amended Complaint, damaged 972 and Intermed. Because 972 is the majority member of Intermed, 972's damages include, but are not limited to, an amount proportional to the loss in value to its ownership interest in Intermed. It is clear, therefore, that Defendants ongoing breach is damaging 972.

### VI. Proper Venue Does Lie with the Southern District of New York

Defendants Pugliese and IMT motion to dismiss for lack of venue or to transfer to the Southern District of Florida is baseless. Pugliese and IMT rely on the residence of all defendants in an attempt to dismiss or transfer this case to Florida. Venue is proper in the Southern District

of New York because Laing and LHC have a contractual choice of venue clause in paragraph 12.4 the Operating Agreement. (A copy of the Operating Agreement is annexed to the Declaration of Joel S. Schneck as **Exhibit "B".**) The choice of venue clause states, in relevant part, that "each of the parties hereto hereby irrevocably submits to the exclusive jurisdiction of the **federal** and state courts located in the **city, Co. and state of New York** in connection with any suit, action or proceeding related to this Agreement" emphasis added. Paragraph 12.4 further states "each of the parties hereto irrevocably waives… any objection which they may now or hereafter have **to the laying of venue of any such suit,** action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum." (emphasis added). Laing and LHC expressly consented to have venue laid before this Court.

Pugliese and IMT only, seek to dismiss or transfer to Florida because Laing and LHC are not permitted to under the terms of the agreement. Pugliese and IMT's motion should be denied, however, because as alleged in the Amended Complaint, Pugliese and IMT are simply nominees and alter egos of Laing and LHC in the violation the Operating Agreement and causing damage to Plaintiffs. As the nominees and alter ego's of Laing and LHC in commission of the wrongs alleged in the Amended Complaint, equity should not allow the Court to transfer this action pursuant to a request by Pugliese and IMT.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

motion in its entirety.

Dated: New York, New York
      July 11, 2008

                    GOLDBERG & RIMBERG, PLLC


                    By:_____
                    Joel S. Schneck (JSS7019)
                    Robert L. Rimberg (RLR2453)
                    Attorneys for Plaintiffs
                    115 Broadway, 3rd Floor
                    New York, New York 10006
                    (212) 697-3250

Robert L. Rimberg, Esq. (RLR2453)
Joel S. Schneck, Esq. (JSS7019)
GOLDBERG & RIMBERG, PLLC
115 Broadway – 3rd Floor
New York, New York 10006
Phone: (212)697-3250
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

972 IRREVOCABLE TRUST and
INTERMED GAS PRODUCTS, LLC.                    Docket No.  1:08-cv-04907-RPP

                    Plaintiffs,

        -against-

MICHAEL LAING, ROBERTA A.
PUGLIESE, LAING HOLDINGS
CORPORATION and INTERACTIVE
MEDICAL TECHNOLOGIES, CORP.,

                    Defendants.
-------------------------------------------------------X

## DECLARATION OF JOEL S. SCHNECK
## IN OPPOSITION TO MOTION TO DISMISS

        JOEL S. SCHNECK, an attorney admitted to practice before this Court, declares:

1.        I am a member of Goldberg & Rimberg, PLLC, attorneys for plaintiffs 972

Irrevocable Trust and Intermed Gas Products, LLC.  I submit shit declaration in

opposition to defendants' motion seeking to dismiss Plaintiffs' Amended Complaint in

part or in the alternative, motion to transfer venue to the Southern District of Florida.

2.        A copy of the Amended Complaint is annexed hereto as Exhibit "A".

3.        A copy of the applicable Operating Agreement is annexed hereto as Exhibit

"B".

Dated: New York, New York
     July 11, 2008

_____
Joel S. Schneck

# EXHIBIT "A"

Robert L. Rimberg, Esq. (RLR2453)
Joel S. Schneck, Esq. (JSS7019)
GOLDBERG & RIMBERG, PLLC
115 Broadway – 3rd Floor
New York, New York 10006
Phone: (212)697-3250
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

972 IRREVOCABLE TRUST and
INTERMED GAS PRODUCTS, LLC.

                Plaintiffs,

      -against-

MICHAEL LAING, ROBERTA A.
PUGLIESE, LAING HOLDINGS
CORPORATION and INTERACTIVE
MEDICAL TECHNOLOGIES, CORP.,

                Defendants.
-------------------------------------------------------X

**AMENDED**
**COMPLAINT**

Docket No.  1:08-cv-04907-RPP

Jury Trial Demanded

       Plaintiffs, 972 Irrevocable Trust and Intermed Gas Products, LLC, as and for their complaint against the defendants, Michael Laing, Roberta Pugliese, Laing Holdings Corporation and Interactive Medical Technologies, Corp (referred to as the "Defendants") allege as follows:

## PARTIES

      1.     Plaintiff  972 Irrevocable Trust [hereinafter "Trust" or "the Trust"] is an irrevocable trust organized under the laws of the Lichtenstein.

      2.     Plaintiff Intermed Gas Products, LLC [hereinafter "Intermed" or the "Company"] is a New York limited liability company.

1

3.      Upon information and belief, defendant Michael Laing [hereinafter "Laing"] is resident of the State of Florida and regularly and systematically transacts business in the State of New York.

4.      Upon information and belief, defendant Roberta Pugliese [hereinafter "Pugliese"] is a resident of the State of Florida.

5.      Upon information and belief, defendant Laing Holdings Corporation [hereinafter "LHC"] is a Florida corporation.

6.      Upon information and belief, defendant Interactive Medical Technologies, Corp. [hereinafter "Interactive"] is a Florida corporation.

## NATURE OF ACTION

7.      This is an action for breach of contract, breach of fiduciary duty, for an accounting, conversion, wasting corporation opportunity, intentional interference with business relationships, negligence, civil conspiracy, fraud, unfair competition and for a permanent injunction arising out of Defendants' unlawful operation of business in violation of express agreements and Defendants' malfeasance as an officer and member of Intermed.

## JURISDICTION AND VENUE

8.      Defendants are subject to Defendants are subject to long-arm jurisdiction because they committed a tortious act outside of New York which caused an injury within New York and/or they should expect or should reasonably expect the act to have consequences in the state. In addition, Defendants have derived substantial revenue with from interstate or international commerce, and are otherwise subject to the jurisdiction of the Court. Defendants have a

presence or engage in the solicitation of business in the State of New York, derive substantial revenue from the promotion of services in the State of New York and/or have committed acts causing injury to Plaintiff within the State of New York. Defendants' acts confer in personam jurisdiction over them. In addition, jurisdiction is proper pursuant to an agreement to which Laing and LHC are parties with Pugliese and Interactive as their alter egos and/or nominees.

9.      Subject matter jurisdiction is conferred on this Court by 28 U.S.C. §§ 1332 and 1367(a). Plaintiff Intermed is a New York corporation and Plaintiff Trust is an irrevocable trust organized under the laws of Lichtenstein. Defendants reside and/or are corporations organized in Florida.

10.     Venue is proper in this Court pursuant to agreement and/or conspiracy to commit tort subject to this Court's jurisdiction under 28 U.S.C. §1367(a).

## **BACKGROUND**

11.     Intermed, a New York limited liability company, filed Articles of Organization with the State of New York on November 30, 2005.

12.     The Trust is the majority member of Intermed.

13.     Intermed executed an Operating Agreement on November 30, 2005 [hereinafter the "2005 Operating Agreement."

14.     The Members of Intermed Gas Products, LLC in the 2005 Operating Agreement were Martell, LLC [hereinafter "Martell"]; LHC; and W. Murray Corporation.

15.     The 2005 Operating Agreement listed the membership interest of the members.

16.     The 2005 Operating Agreement recorded that Martell had a 1% membership

3

interest in Intermed.

17.     The 2005 Operating Agreement recorded that LHC had a 49.5% membership interest in Intermed.

18.     The 2005 Operating Agreement recorded that W. Murray Corporation had a 49.5% membership interest in Intermed.

19.     On February 23, 2006, an Amended and Restated Operating Agreement [hereinafter the "Operating Agreement"] for Intermed Gas Products, LLC. was executed as between Martell, LHC, and W. Murray Corporation.

20.     On June 28, 2007, a Forbearance Agreement was executed by and between Intermed, LHC, Michael Laing individually, and Martell.

21.     The Forbearance Agreement transferred Martell's entire membership interest in Intermed to Plaintiff 972 Irrevocable Trust [hereinafter the "Trust"].

22.     As a result of the Forbearance Agreement, Martell withdrew as a Member of Intermed.

23.     Under the terms of the Forbearance Agreement, the Trust has been substituted as a Member and assumes all of the rights and benefits of Martell under the Operating Agreement.

24.     At the time of the Forbearance Agreement, Intermed, LHC and Michael Laing were in default of their agreements with respect to existing agreements with Martell.

25.     The Forbearance Agreement was intended to induce Martell to forbear from taking immediate action against Intermed, LHC and Michael Laing on account of said defaults.

26.     As a result of the Forbearance Agreement, the membership interests in Intermed changed.

4

27.    As a result of the Forbearance agreement, Laing's individual membership interest in Intermed as of May 31, 2007 is 32.5%.

28.    As a result of the Forbearance agreement, 972 Irrevocable Trust's membership interest in Intermed as of May 31, 2007 is 57.5%.

29.    As a result of the Forbearance agreement, the membership interest in Intermed as of May 31, 2007 of "MERLIN" is 10%.

### Michael Laing

30.    Defendant Laing is, and at all relevant times was, the President of LHC.

31.    Laing was a consultant to Intermed from on or about December 1, 2005 until April 9, 2008.

32.    LHC was a consultant to Intermed from on or about December 1, 2005 until April 9, 2008.

33.    Laing and LHC were terminated due to conduct damaging Intermed, breach of fiduciary duty, breach of contract, diversion of corporate opportunity, conversion, embezzlement and negligence.

34.    Defendants Pugliese and Interactive are alter egos and/or nominees of Laing and LHC in conducting business.

### Intermed Gas Products, LLC.

35.    The business of Intermed is to arrange for the manufacture, purchase and sale of gas cylinders, valves, regulators, conserving devices and other related devices from suppliers and

resell them to third parties. Intermed sells, among other things, fingertip pulse oximeters which are used to indirectly measure a patient's blood's oxygen saturation.

36.     Many of the products sold by Intermed are manufactured overseas and then sold domestically to companies in the healthcare area.

### Agreements

37.     Laing and LHC consented individually to devote his "full time and attention to the business of the Company" in ¶4.4 of the 2005 Operating Agreement and the (amended) Operating Agreement.

38.     Laing and LHC consented in the 2005 Operating Agreement individually not to "directly or indirectly, engage or invest in, own, manage, operate, finance, control, or participate in the ownership management, operation, financing, or control of, be employed by, associated with, or in any manner connected with, lend [his] name or any similar name to, lend their credit to, or render service or advice to, any business whose products, product development, sales, services or other activities of or offered by Company…"

39.     Defendant LHC consented on behalf of Michael Laing individually and on its own accord as a corporation in ¶4.5 of the (amended) Operating Agreement not to engage "in any transaction competitive with the business of the Company."

### Competing Ventures

40.     Upon information and belief, Defendant Pugliese is the girlfriend and intimate companion of Defendant Laing and is the principal of Interactive, a Florida Corporation.  Upon

information and belief, Defendant Pugliese is a licensed real estate broker and does not have any experience in Intermed and/or Interactive's industry.

41.    Upon information and belief, Interactive is a competitor to Intermed, buying and reselling similar merchandise as Intermed.

42.    Upon information and belief, the primary business of Interactive is, among other things, to arrange for the manufacture, purchase and sale of fingertip pulse oximeters, gas cylinders, valves, regulators, conserving devices and other related devices from suppliers and resell them to third parties.

43.    Pugliese is a nominee and/or alter ego for Laing and/or LHC doing business as Interactive in an attempt to prevent Plaintiffs from finding out that they are competing with them.

44.    Laing and/or LHC operated and/or managed Interactive during the time that he was employed by the Intermed in violation of agreement.

45.    Laing and/or LHC have and continue to, among other things, provide names and contact information of Intermed's clients and provide names and contact numbers of Intermed's suppliers and vendors to Pugliese and/or Interactive in violation of agreement.

46.    Defendants have usurped corporate opportunities that would otherwise have been available to Intermed in violation of agreement.

47.    Laing and LHC were compensated and/or otherwise received benefit for their efforts and assistance to Interactive in violation of agreement.

48.    Upon information and belief, Laing has admitted instances where Intermed had a business opportunity but he decided to give the opportunity to Interactive.

### Missing Funds and Inventory

49.     Intermed maintains at least one bank account at Bank of America.

50.     On or about April 9, 2008, Laing and LHC's employment with Intermed was terminated.

51.     On or about April 9, 2008, $9,000.00 was transferred from Intermed's bank account at Bank of America into an account controlled by Laing and/or LHC.  The account to which the monies were transferred is not under the control and/or ownership of Intermed.

52.     Upon information and belief, the funds were transferred by Laing and/or LHC.

53.     Said transfer was not authorized by Intermed.

54.     As a result of such transfers, checks written by Intermed were returned for insufficient funds.

55.      There have been other transfers of funds from bank accounts belonging to Intermed.

56.     Upon information and belief, Laing and/or LHC transferred funds prior to April 9, 2008 into accounts under Laing and/or LHC's control, and such accounts were not under the control and/or ownership of Intermed.

57.     Upon information and belief, inventory was wrongfully taken by Laing.

58.     Such inventory is represented by a physical adjustment recorded by Intermed in November 2006 in the amount of $260,000.

### Mismanagement of Intermed

59.     Laing and LHC have failed to file tax returns for Intermed for the years 2006 and

2007.

60.   Laing and LHC failed to issue IRS Form 1099's on behalf of Intermed during the years 2006-2007.

61.   Laing and LHC allowed receivables to be paid late causing Intermed not to generate enough cash for day to day operations.

62.   Throughout his employment with Intermed, Laing kept inaccurate records of inventory and Intermed's finances.

63.   Throughout his employment with Intermed, Laing's monthly and annual sales projections were often grossly misstated.

64.   Said sales projections were required to plan for Intermed's: future, finances and day to day operations.

65.   Throughout his association with Intermed, Laing often misstated his own sales projections by as much as fifty percent (50%).

66.   Laing often purchased the wrong items for inventory.

67.   Laing often purchased too much inventory.

68.   On other occasions Laing purchased far too little inventory.

69.   Laing often purchased inventory too late.

70.   Upon information and belief, following Laing and LHC's termination, Laing has contacted Intermed's current customers, potential customers and/or suppliers, all from information obtained while employed by Intermed.

71.   Upon information and belief, said communications were made after Laing and LHC termination on April 9, 2008.

9

72.     Upon information and belief, the purpose of such communications was and is to divert business to Laing, LHC and/or Interactive.

73.     Laing has taken property belonging to Intermed for use by parties other than Intermed, including, but not limited to, Interactive and Pugliese.  Such property includes customer files and documents belonging to Intermed.  Such property contains confidential information, proprietary secrets and/or trade secrets.

74.     Upon information and belief, Laing has utilized Intermed's resources and proprietary secrets to conduct business for Interactive.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST
## ALL DEFENDANTS

### (Breach of Contract)

75.     Plaintiff repeats and realleges paragraphs 1-74 above, inclusive, as if fully set forth herein.

76.     Defendant Laing is personally obligated under paragraph 4.4 of the Operating Agreement to devote his full time and attention to the business of Intermed.

77.     Defendant LHC is obligated under paragraph 4.4 of the Operating Agreement to devote its full time and attention to the business of Intermed.

78.     Defendants Laing and LHC did not and do not devote their full time and attention to the business of Intermed.

79.     Defendants Laing and LHC operated and managed a competing business instead of devoting time to Intermed.

80.     Laing and LHC are intentionally violating paragraph 4.4 of the Operating

10

Agreement by means of their past and continuous role in the operation and management of Interactive.

81.    Pugliese and Interactive are acting as Laing and/or LHC's nominee and/or alter ego in furtherance of Laing and LHC's intentional violation of paragraph 4.4 of the Operating Agreement.

82.    As a result of the foregoing, Plaintiff has been injured by Laing and LHC's failure to abide by the terms of the Operating Agreement and have been deprived of the benefit of the Operating Agreement.

83.    As a result of Laing's breach of contract, Plaintiffs have been damaged in an amount to be determined at trial but in no event less than $2,000,000.00 together with interest thereon.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Breach of Contract)

84.    Plaintiff repeats and realleges paragraphs 1-83 above, inclusive, as if fully set forth herein.

85.    Defendants Laing and LHC were each prohibited under paragraph 4.5 of the Operating Agreement from engaging in any transaction competitive with the business of Intermed, directly or indirectly,[1] and more specifically not to "engage or invest in, own, manage, operate, finance, control, or participate in the ownership, management, operation, financing, or control of, be employed by, associated with… any business whose product, products

---

[1] That would mean that Pugliese and Interactive, as nominees and/or alter egos, are directly violating the agreement.

11

development, sales, services or other activities compete in any respect with the products, product development, sales, services or other activities of or offered by the Company" anywhere in the world while LHC is a Member of Intermed or for a five (5) year period thereafter.

86.    Laing and LHC work in conjunction with, operate and/or manage Interactive.

87.    Interactive was, and continues to be, a competing business to Intermed.

88.    Laing and LHC are violating paragraph 4.5 by way of their past and continuous support and association in operating and/or managing Interactive.

89.    Pugliese and Interactive are acting as Laing and/or LHC's nominee and/or alter ego in furtherance of Laing and LHC's intentional violation of paragraph 4.5 of the Operating Agreement.

90.    As a result of the foregoing, Plaintiff has been injured by Laing and LHC's failure to abide by the terms of the Operating Agreement and have been deprived of the benefit of the Operating Agreement.

91.    As a result of Laing's and LHC breach of contract, Plaintiffs have been damaged in an amount to be determined at trial but in no event less than $2,000,000.00 together with interest thereon.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT MICHAEL LAING AND LAING HOLDINGS

### (Breach of Fiduciary Duty)

92.    Plaintiff repeats and realleges paragraphs 1-91 above, inclusive, as if fully set forth herein.

93.    During his employment Defendant Michael Laing and LHC had a fiduciary duty

to Intermed.

94.    Laing and LHC did not exert their best efforts on behalf of Intermed.

95.    Laing and LHC assisted another corporation acting as his alter ego in competing with Intermed and profited at its expense.

96.    Laing and LHC placed their private interests in conflict with the interests of Intermed by transferring funds into his own bank accounts and wrongfully taking inventory from Intermed for the benefit of Interactive, a company from which he was compensated.

97.    Laing and LHC took Intermed's customer files for competitive use and utilized Intermed's time, facilities and proprietary secrets to further such use.

98.    Laing and LHC have usurped corporate opportunities on behalf of co-defendants Pugliese and Interactive.

99.    As a result of the foregoing, Plaintiff has been injured by Laing and LHC's breach of fiduciary duty to Intermed.

100.    As a result of Laing and LHCs breach of fiduciary duty, Plaintiffs have been damaged in an amount to be determined at trial but in no event less than$2,500,000.00 together with interest thereon.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT MICHAEL LAING AND LAING HOLDINGS

### (Accounting)

101.    Plaintiff repeats and realleges paragraphs 1-100 above, inclusive, as if fully set forth herein.

102.    Defendants Laing and LHC have retained and/or caused to be diverted to himself

13

sums of money properly belonging to Intermed, the amount of which is unknown at this time to the plaintiff.

103.    Plaintiff seeks an accounting in order for it to identify, quantify and recover any and all money that has been wrongfully retained or diverted by Laing and belonging to Intermed.

104.    Defendant has failed to account for any missing monies that he has been asked about by Plaintiff and/or its agents.

105.    Plaintiff has no adequate remedy at law.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANT MICHAEL LAING AND LAING HOLDINGS

### (Conversion)

106.    Plaintiff repeats and realleges paragraphs 1-105 above, inclusive, as if fully set forth herein.

107.    Laing and LHC have exercised dominion and/or control over customer files and documents belonging to Intermed which interferes with Intermed's rights.

108.    The customer files and/or documents contain proprietary information, are confidential and/or contain trade secrets.

109.    Laing and LHC have exercised dominion and/or control over Intermed's inventory which interferes with Intermed's rights.

110.    Laing and LHC have converted business opportunities belonging to Intermed while a Member of Intermed.

111.    Laing and LHC continue to convert business opportunities belonging to Intermed while a Member of Intermed.

14

112.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial but in no event less than$3,000,000.00 together with interest thereon.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANT MICHAEL LAING AND LAING HOLDINGS

### (Conversion)

113.    Plaintiff repeats and realleges paragraphs 1-112 above, inclusive, as if fully set forth herein.

114.    Laing and LHC were entrusted by Intermed to hold monies on behalf of Intermed.

115.    On or about April 9, 2008, Laing and LHC were terminated by Intermed.

116.    On or about April 9, 2008, Laing and/or LHC transferred $9,000.00 from bank accounts owned by Intermed.

117.    Laing and LHC have exercised dominion and/or control over monies belonging to Intermed which interferes with Intermed's rights.

118.    As a result of the missing funds, checks were returned to Intermed due to insufficient funds.

119.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial together with interest thereon.

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANT MICHAEL LAING AND LAING HOLDINGS CORP.

### (Wasting Corporate Opportunity)

120.    Plaintiff repeats and realleges paragraphs 1-119 above, inclusive, as if fully set

15

forth herein.

121.    Laing and LHC had the custody of names and contact information of Intermed's clients and/or potential clients.

122.    Laing and LHC provided such information to Pugliese and/or Interactive causing a loss of potential clients to Intermed.

123.    Laing and LHC used such information for the private use of Laing and/or LHC.

124.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial but in no event less than $2,000,000.00  together with interest thereon.


### AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS ROBERTA PUGLIESE AND INTERACTIVE MEDICAL TECHNOLOGIES, CORP.

#### (Intentional Interference with Business Relationships)

125.    Plaintiff repeats and realleges paragraphs 1-124 above, inclusive, as if fully set forth herein.

126.    Defendant Pugliese is the principal of Interactive as well as the girlfriend of Defendant Laing.

127.    Interactive is a competitor to Intermed.

128.    Laing and LHC are personally obligated under the Operating Agreement not to compete or be associated with any other company that competes with Intermed.

129.    Laing and LHC are personally obligated under the Operating Agreement to devote his full time and attention to Intermed.

130.    Pugliese and Intermed have intentionally and through wrongful acts prevented Defendant Laing from complying with the Operating Agreement by seeking his assistance in

16

operating and managing Interactive.

131.    Pugliese and Intermed are aware of Laing and LHC's obligations under the Operating Agreement.

132.    As a result of the foregoing, Plaintiff has been damaged by Pugliese and Interactive's intentional and wrongful acts preventing Defendant Laing from complying with the operating agreement.

133.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial but in no event less than $3,000,000.00  together with interest thereon.

## AS AND FOR A NINTH CAUSE OF ACTION AGAINST DEFENDANT MICHAEL LAING AND LAING HOLDINGS

### (Negligence)

134.    Plaintiff repeats and realleges paragraphs 1-133 above, inclusive, as if fully set forth herein.

135.    Lang and LHC served as President of Intermed.

136.    Laing and LHC allowed receivables to be paid late.

137.    Throughout his employment with Intermed, Laing and LHC kept inaccurate records of inventory and Intermed's finances.

138.    Throughout his employment with Intermed, Laing's monthly and annual sales projections were often overly misstated.

139.    Throughout his association with Intermed, Laing often misstated his own sales projection by as much as fifty percent (50%).

140.    Laing and LHC often purchased the wrong items for inventory.

17

141.   Laing and LHC often purchased too much inventory.

142.   Laing and LHC often purchased too little inventory.

143.   Laing and LHC often purchased inventory too late.

144.   Laing and LHC personally are the cause of the damage to Intermed.

145.   Laing and LHC acted in bad faith.

146.   Upon information and belief, Laing and/or LHC have solicited Intermed's customers while still a Member of Intermed for their own personal use.

147.   Upon information and belief, Laing and/or LHC have used Intermed's good name to create relationships for Laing, LHC, Interactive and/or Pugliese and to compete with Intermed.

148.   Laing and LHC are unlawfully self dealing.

149.   Laing and LHC actions are such that no person of ordinary sound business judgment would say Intermed received fair benefit.

150.   As a result of Laing and LHC's actions, Intermed has been damaged in an amount to be determined at trial but in no event less than $5,000,000.00.


### AS AND FOR A TENTH CAUSE OF ACTION AGAINST
### ROBERTA PUGLIESE AND INTERACTIVE MEDICAL TECHNOLOGIES, CORP.

### (Civil Conspiracy)

151.   Plaintiff repeats and realleges paragraphs 1-150 above, inclusive, as if fully set forth herein.

152.   Lang and LHC intentionally committed fraud against Plaintiffs.

153.   Laing and LHC intentionally converted $9,000.00 belonging to the Plaintiffs.

154.   Laing and LHC have converted business opportunities belonging to Intermed

18

while a Member of Intermed.

155.    Laing and LHC continue to convert business opportunities belonging to Intermed while a Member of Intermed.

156.    Laing and LHC intentionally converted documents and/or files belonging to Plaintiffs containing customer information, proprietary secrets, confidential information and/or trade secrets.

157.    Pugliese and Interactive had an agreement with Laing and/or LHC in furtherance of committing fraud against Plaintiffs and converting Plaintiffs' property.

158.    Pugliese and Interactive participated in the agreement in furtherance of the plan and/or purpose.

159.    Pugliese and Interactive's participation in the agreement has resulted in damage in an amount to be determined at trial but in no event less than $3,000,000.00.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION AGAINST MICHAEL LAING AND LAING HOLDINGS CORP.

### (Fraud)

160.    Plaintiff repeats and realleges paragraphs 1-159 above, inclusive, as if fully set forth herein.

161.    Laing and LHC were at the time of agreeing to the Operating Agreement actively competing with Intermed and not devoting their full time and attention to Intermed.

162.    Laing and LHC intended to continue to compete and not devote their full time and attention to Intermed.

163.    Laing and LHC misrepresented their intention not to devote their full time to

19

Intermed.

164.    Laing and LHC misrepresented to the Plaintiffs their intentions not to compete with Intermed.

165.    Laing and LHC made said misrepresentations to induce Plaintiffs to operate Intermed to Laing and LHC's personal benefit.

166.    Intermed has been damaged by entering into the Operating Agreement with Laing and LHC.

167.    As a result of Laing and LHC's actions, Intermed has been damaged in an amount to be determined at trial but in no event less than $5,000,000.00.

## AS AND FOR A TWELFTH CAUSE OF ACTION AGAINST MICHAEL LAING AND LAING HOLDINGS CORP.

### (Unfair Competition)

168.    Plaintiff repeats and realleges paragraphs 1-167 above, inclusive, as if fully set forth herein.

169.    Plaintiffs, Laing and LHC are parties to the Operating Agreement.

170.    The Operating Agreement prohibits competition by Laing and LHC.

171.    Laing and LHC have competed with Intermed in bad faith, misappropriating a commercial advantage which belonged exclusively to Intermed.

172.    Unless defendants are enjoined, they will engage in further acts of unlawful and unfair competition, causing Intermed immediate and irreparable harm for which there is no adequate remedy at law.

173.I   n addition, Intermed has suffered, and will continue to suffer, substantial damages

as a result of defendants' unlawful and unfair competition.

174.   As a result of Laing and LHC's actions, Intermed has been damaged in an amount

to be determined at trial.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Permanent Injunction)

175.   Plaintiff repeats and realleges paragraphs 1-174 above, inclusive, as if fully set

forth herein.

176.   The Operating Agreement contains at least one restrictive covenant.

177.   Defendants Laing and LHC are breaching the Operating Agreement.

178.   Defendants Pugliese and Interactive are a nominee of Laing and LHC in

breaching the Operating Agreement.

179.   Defendants' blatant breach of contract will cause irreparable harm to Plaintiffs

including, but not limited to, an undetermined loss of future revenue.

180.   As a result of the restrictive covenant, it is demanded that Defendants be

permanently enjoined from competing with Intermed and/or any of its successor corporations.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Misappropriation of Trade Secrets)

181.   Plaintiff repeats and realleges paragraphs 1-180 above, inclusive, as if fully set

forth herein.

182.   Intermed's confidential and proprietary business information, including, but not

21

limited to, Intermed's customer and prospective customer lists, the identity of Intermed's

potential customers, and details of Intermed's customers' expressed needs and future plans and

other related information are trade secrets entitled to protection from unauthorized disclosure

  183. Defendants Laing and LHC misappropriated plaintiff's trade secrets prior and

after termination by plaintiff, and have shared these trade secrets with Pugliese and Interactive.

  184. Defendants have misappropriated and continue to misappropriate the trade secrets

of Intermed, and Intermed has been and continues to be harmed thereby.

  185. As a result of the foregoing, Plaintiffs have been damaged in an amount to be

determined at trial but in no event less than $3,000,000.00 together with interest thereon.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION AGAINST
## ROBERTA PUGLIESE AND INTERACTIVE MEDICAL TECHNOLOGIES, CORP.

### (Aiding and Abetting Breach of Fiduciary Duty)

  186. Plaintiff repeats and realleges paragraphs 1-185 above, inclusive, as if fully set

forth herein.

  187. Laing and/or LHC breached a fiduciary duty to the Plaintiffs.

  188. Pugliese and Interactive were aware of Laing and/or LHC's fiduciary duty.

  189. Pugliese and Interactive were aware of Laing and/or LHC's breach of said

fiduciary duty.

  190. Pugliese and Intereactive affirmatively assisted Laing and/or LHC breach said

fiduciary duty in acting as their nominee.

  191. As a result of the foregoing, Plaintiffs have been damaged in an amount to be

determined at trial but in no event less than $2,000,000.00 together with interest thereon.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION AGAINST
## ROBERTA PUGLIESE AND INTERACTIVE MEDICAL TECHNOLOGIES, CORP.

### (Aiding and Abetting Conversion)

192.    Plaintiff repeats and realleges paragraphs 1-191 above, inclusive, as if fully set

forth herein.

193.    Laing and/or LHC converted property and/or monies belonging to the Plaintiffs.

194.    Pugliese and Interactive were aware of Laing and/or LHC's conversion.

195.    Pugliese and Intereactive affirmatively assisted Laing and/or LHC conversion in

acting as their nominee.

196.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be

determined at trial but in no event less than $2,000,000.00 together with interest thereon.


## AS AND FOR A SEVENTEENTH CAUSE OF ACTION AGAINST
## ROBERTA PUGLIESE AND INTERACTIVE MEDICAL TECHNOLOGIES, CORP.

### (Aiding and Abetting Fraud)

197.    Plaintiff repeats and realleges paragraphs 1-196 above, inclusive, as if fully set

forth herein.

198.    Laing and/or LHC committed a fraud on the Plaintiffs.

199.    Pugliese and Interactive were aware of Laing and/or LHC's fraud.

200.    Pugliese and Intereactive affirmatively assisted Laing and/or LHC fraud by acting

as their nominee.

201.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be

determined at trial but in no event less than $2,000,000.00 together with interest thereon.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the entry of a judgment from this Court:

On the First Cause of Action, judgment against all Defendants, in an amount to be determined at trial but in no event less than $2,000,000.00 together with interest thereon;

On the Second Cause of Action, judgment against all Defendants, in an amount to be determined at trial but in no event less than $2,000,000.00 together with interest thereon;

On the Third Cause of Action, judgment against Michael Laing and Laing Holdings Corp., in an amount to be determined at trial but in no event less than $2,500,000.00 together with interest thereon;

On the Fourth Cause of Action, judgment against Michael Laing and Laing Holdings Corp. and an accounting of the receipts of Intermed from November 30, 2005 to April 9, 2008, together with an award of damages or restitution of such monies as may be determined by said accounting to have been wrongfully withheld from Intermed, together with interest, the costs and professional or other fees incurred in connection with said accounting, together with prejudgment interest thereon;

On the Fifth Cause of Action, judgment against Michael Laing and Laing Holdings Corp., in an amount to be determined at trial but in no event less than $3,000,000.00, together with prejudgment interest thereon;

24

On the Sixth Cause of Action, judgment against Michael Laing and Laing Holdings Corp., in an amount to be determined at trial with prejudgment interest thereon;

On the Seventh Cause of Action, judgment against Michael Laing and Laing Holdings Corp. in an amount to be determined at trial but in no event less than $2,000,000.00, together with interest thereon.

On the Eighth Cause of Action, judgment against the Defendants Roberta Pugliese and Interactive Medical Technologies, Corp., in an amount to be determined at trial but in no even less than $3,000,000.00, together with prejudgment interest thereon;

On the Ninth Cause of Action, judgment against Defendant Michael Laing in an amount to be determined at trial but in no event less than $5,000,000.00, together with interest thereon.

On the Tenth Cause of Action, judgment against Roberta Pugliese and Interactive Medical Technologies, Corp., in an amount to be determined at trial but in no event less than $3,000,000.00, together with interest thereon.

On the Eleventh Cause of Action, judgment against Michael Laing and Laing Holdings Corp., in an amount to be determined at trial but in no event less than $5,000,000.00, together with interest thereon.

On the Twelfth Cause of Action, judgment against Michael Laing and Laing Holdings Corp., in an amount to be determined at trial.

On the Thirteenth Cause of Action, judgment against all Defendants, enjoining Defendants from competing with Intermed Gas Products, LLC and/or any of its successor corporations.

25

On the Fourteenth Cause of Action, judgment against all Defendants in an amount to be determined at trial but in no event less than $3,000,000.00 together with interest thereon.

On the Fifteenth Cause of Action, judgment against Roberta Pugliese and Interactive Medical Technologies, Corp. in an amount to be determined at trial but in no event less than $2,000,000.00 together with interest thereon.

On the Sixteenth Cause of Action, judgment against Roberta Pugliese and Interactive Medical Technologies, Corp. in an amount to be determined at trial but in no event less than $2,000,000.00 together with interest thereon.

On the Seventeenth Cause of Action, judgment against Roberta Pugliese and Interactive Medical Technologies, Corp. in an amount to be determined at trial but in no event less than $2,000,000.00 together with interest thereon.

On all Causes of Action, costs and fees, including reasonable attorneys' fees, incurred by plaintiff in connection with this action and such other relief as the Court deems just and proper.

Dated: New York, New York
       June 12, 2008

Robert L. Rimberg, Esq. (RLR2453)
Joel S. Schneck, Esq. (JSS7019)
GOLDBERG & RIMBERG, PLLC
115 Broadway – 3rd Floor
New York, New York 10006
Phone: (212)697-3250

26

# EXHIBIT "B"

AMENDED AND RESTATED

OPERATING AGREEMENT
FOR
INTERMED GAS PRODUCTS, LLC
A NEW YORK LIMITED LIABILITY COMPANY

This Operating Agreement (this "Agreement"), is made as of February 23 2006, by and between the parties listed on the signature pages hereof (collectively referred to as the "Members" or individually as a "Member"), with reference to the following facts:

A.    On December 1, 2005 Articles of Organization ("Articles") for INTERMED GAS PRODUCTS, LLC (the "Company"), a New York limited liability company, was filed with the New York Secretary of State.

B.    As of November 30, 2005 the Members adopted and approved an operating agreement for the Company under the New York Limited Liability Company Law (the "Act").

C.    The Members desire to amend and restate the operating agreement for the Company.

NOW, THEREFORE, the Members by this Agreement set forth the amended and restated operating agreement for the Company upon the terms and subject to the conditions of this Agreement.

## ARTICLE I
## ORGANIZATIONAL MATTERS

1.1    Name. The name of the Company shall be "Intermed Gas Products, LLC." The Company may conduct business under those names or any other name approved by the Members.

1.2    Term. The term of the Company commenced as of the date of the filing of the Articles and shall continue until terminated as hereinafter provided.

1.3    Office and Agent. The Company shall continuously maintain an office and registered agent in the State of New York as required by the Act. The registered office of the Company in the State of New York is located at c/o Martell, LLC, 405 Park Avenue, 15th Floor, New York, NY 10022. The registered agent for the Company for service of process at such address is Michael Milea. The principal office of the Company shall be at 405 Park Avenue, 15th Floor, New York, New York 10022, or such other location as the Members may determine.

1.4    Business of the Company. Notwithstanding the purpose of the Company which is described in the Articles, the Company shall not engage in any business other than the following without the consent of all of the Members:

A.    the purchase from suppliers and resale of gas cylinders, valves, regulators, conserving devices and other related devices; and

B.    such other activities directly related to the foregoing business as may be necessary or advisable in the reasonable opinion of the Members to further such business.

## ARTICLE II
## CAPITAL CONTRIBUTIONS

2.1    Capital Contributions. Each Member shall make an initial contribution to the capital of the Company in kind and in the amount shown opposite the Member's name on Exhibit A attached hereto. Except as provided in this Agreement, no Member may withdraw his or her capital contribution.

2.2    Capital Accounts. The Company shall establish an individual capital account ("Capital Account") for each Member. The Company shall determine and maintain each Capital Account in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv). Upon a valid transfer of a Member's interest in the Company ("Membership Interest") in accordance with Article VI, such Member's Capital Account shall carry over to the new owner.

2.3    No Interest. The Company shall not pay any interest on capital contributions.

## ARTICLE III
## MEMBERS

3.1    Admission of Additional Members. Additional Members may be admitted with the approval of all Members. Additional Members will participate in the management, "Net Profits", "Net Losses" (as such terms are defined in Section 5.1), and distributions of the Company on such terms as are determined by the Members. Exhibit A shall be amended upon the admission of an additional Member to set forth such Member's name and capital contribution.

3.2    Withdrawals or Resignations. No Member may withdraw, retire or resign from the Company, other than in connection with a transaction permitted by Section 7 hereof.

3.3    Payments to Members. Except as specified in this Agreement or pursuant to a transaction permitted by Section 4.6, no Member or person or entity controlled by, controlling or under common control with the Member (each such person or entity is defined as an "Affiliate"), is entitled to remuneration for services rendered or goods provided to the Company. However, the Company shall reimburse the Members and their Affiliates for organizational expenses (including, without limitation, legal and accounting fees and costs) incurred to form the Company, prepare the Articles and this Agreement and, as approved by the Members, for the actual cost of goods and materials used by the Company.

## ARTICLE IV
## MANAGEMENT AND CONTROL OF THE COMPANY

4.1    Management and Powers. Except as otherwise expressly provided herein, each Member shall participate in the control, management and direction of the business of the Company, and, except as otherwise expressly provided herein, all decisions or consents of Members shall be taken by majority vote, with each Member entitled to votes in accordance with its Membership Interest. By majority consent, the Members may appoint, employ, fire, or otherwise contract with any persons or entities for the transaction of business of the Company or the performance of services for or on behalf of the Company, and the Members may delegate to any such person or entity such authority to act on behalf of the Company as the Members may from time to time deem appropriate. Notwithstanding the generality of the foregoing, a majority must include the vote of Martell's Membership Interest. In the event that a vote of a majority of Membership Interests does not include the affirmative vote of Martell, it shall be deemed not to have been affirmatively voted on.

4.2    Special Bankruptcy Rule. The Company may not file for protection from its creditors under the United States Bankruptcy Code or any other federal or state statute affecting the rights of creditors generally, without the written approval of a majority in interest of the Membership Interests, and if Martell, LLC ("Martell"), for whatever reason, does

not hold a majority in interest of the Membership Interests then, such filing may not be made without the express written approval of Martell.

4.3     Member Approval. No annual or regular meetings of the Members are required to be held. However, if such meetings are held, such meetings shall be noticed, held and conducted pursuant to the Act. In any instance in which the approval of the Members is required under this Agreement, such approval may be obtained in any manner permitted by the Act. Unless otherwise expressly provided in this Agreement, approval of the Members shall mean the majority approval of the Membership Interests

4.4     Devotion of Time. [M LCO] ("MLCO") and its principal Michael Laing ("Laing") and [WMCO] ("WMCO") and its principal William Murray ("Murray") shall devote their full time and attention to the business of the Company and Martell shall devote whatever time or effort it deems appropriate for the furtherance of the Company's business.

4.5     Competing Activities. The Members and their Affiliates may engage or invest in any activity. The Members of the Company may not engage in any transaction, competitive with the business of the Company. Expand

4.6     Member's Responsibilities. Notwithstanding the generality of this Article IV, Martell shall have the responsibility of originating, negotiating the terms and conditions of and managing each of the financing transactions entered into by the Company. Martell shall, in its sole discretion, provide adequate financing to fund the purchase of inventory by the Company. Martell shall also give business advice to the Company, including but not limited to, inventory planning, negotiating terms with suppliers, including timing, pricing, quality control, shipping schedules, delivery schedules, Letter of Credit terms, etc., negotiate payment terms with key customers, review new hirings, meet with salesmen, attend staff meetings, review contracts, review receivables, source and engage consultants to implement software upgrades, engage accountants, bookkeepers etc., who shall report to Martell. Martell shall also provide financial and consulting services to the Company. All of the foregoing shall be governed by a separate Finance and Service Agreement between Martell, or an affiliate, and the Company. The failure by Martell to engage in any of the specified services shall not constitute a default be Martell under this Agreement or give rise to any defense to the Obligations of the Company pursuant to the Finance and Service Agreement. MLCO and WMCO shall have the responsibility of arranging for the purchase and sale of inventory.

4.7     Transactions between the Company and the Members. Notwithstanding that it may constitute a conflict of interest, the Members and their Affiliates may engage in any transaction with the Company so long as such transaction is not expressly prohibited by this Agreement and if the transaction is approved in writing by unanimous consent of the Membership Interests.

## ARTICLE V
## ALLOCATIONS OF NET PROFITS AND NET LOSSES AND DISTRIBUTIONS

5.1     Definitions. When used in this Agreement, the following terms shall have the meanings set forth below:

"Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, the provisions of succeeding law, and to the extent applicable, the Treasury Regulations.

"Company Minimum Gain" shall have the meaning ascribed to the term "Partnership Minimum Gain" in the Treasury Regulations Section 1.704-2(d).

"Member Nonrecourse Debt" shall have the meaning ascribed to the term "Partner Nonrecourse Debt" in Treasury Regulations Section 1.704-2(b)(4).

"Member Nonrecourse Deductions" shall mean items of Company loss, deduction, or Code Section 705(a)(2)(B) expenditures which are attributable to Member Nonrecourse Debt.

"Membership Interest" shall mean the Membership Interest of a Member set forth on Exhibit "A" hereto.

"Net Profits" and "Net Losses" shall mean the income, gain, loss, deductions, and credits of the Company in the aggregate or separately stated, as appropriate, determined in accordance with the method of accounting at the close of each fiscal year employed on the Company's information tax return filed for federal income tax purposes.

"Nonrecourse Liability" shall have the meaning set forth in Treasury Regulations Section 1.752-1(a)(2).

"Treasury Regulations" shall mean the final or temporary regulations that have been issued by the U.S. Department of Treasury pursuant to its authority under the Code, and any successor regulations.

5.2    Allocations of Net Profit and Net Loss.

A.    Net Loss. Net Loss shall be allocated to the Members in proportion to their Membership Interest. Notwithstanding the previous sentence, loss allocations to a Member shall be made only to the extent that such loss allocations will not create a deficit Capital Account balance for that Member in excess of an amount, if any, equal to such Member's share of Company Minimum Gain that would be realized on a foreclosure of the Company's property. Any loss not allocated to a Member because of the foregoing provision shall be allocated to the other Members (to the extent the other Members are not limited in respect of the allocation of losses under this Section 5.2A). Any loss reallocated under this Section 5.2A shall be taken into account in computing subsequent allocations of income and losses pursuant to this Article V, so that the net amount of any item so allocated and the income and losses allocated to each Member pursuant to this Article V, to the extent possible, shall be equal to the net amount that would have been allocated to each such Member pursuant to this Article V if no reallocation of losses had occurred under this Section 5.2A.

B.    Net Profit. Net Profit shall be allocated to the Members in proportion to their Membership Interests.

5.3    Special Allocations. Notwithstanding Section 5.2,

A.    Minimum Gain Chargeback. If there is a net decrease in Company Minimum Gain during any fiscal year, each Member shall be specially allocated items of Company income and gain for such fiscal year (and, if necessary, in subsequent fiscal years) in an amount equal to the portion of such Member's share of the net decrease in Company Minimum Gain that is allocable to the disposition of Company property subject to a Nonrecourse Liability, which share of such net decrease shall be determined in accordance with Treasury Regulations Section 1.704-2(g)(2). Allocations pursuant to this Section 5.3A shall be made in proportion to the amounts required to be allocated to each Member under this Section 5.3A. The items to be so allocated shall be determined in accordance with Treasury Regulations Section 1.704-2(f). This Section 5.3A is intended to comply with the minimum gain chargeback requirement contained in Treasury Regulations Section 1.704-2(f) and shall be interpreted consistently therewith.

B.    Chargeback of Minimum Gain Attributable to Member Nonrecourse Debt. If there is a net decrease in Company Minimum Gain attributable to a Member Nonrecourse Debt, during any fiscal year, each member who has a share of the Company Minimum Gain attributable to such Member Nonrecourse Debt (which share shall be determined in accordance with Treasury Regulations Section 1.704-2(i)(5)) shall be specially allocated items of Company income and gain for such fiscal year (and, if necessary, in subsequent fiscal years) in an amount equal to that portion of such Member's share of the net decrease in Company Minimum Gain attributable to such Member Nonrecourse Debt that is allocable to the disposition of Company property subject to such Member Nonrecourse Debt (which share of such net decrease shall be determined in accordance with Treasury Regulations Section 1.704-2(i)(5)). Allocations pursuant to this Section 5.3B shall be made in proportion to the amounts required to be allocated to each Member under this Section.

5.3B. The items to be so allocated shall be determined in accordance with Treasury Regulations Section 1.704-2(i)(4). This Section 5.3B is intended to comply with the minimum gain chargeback requirement contained in Treasury Regulations Section 1.704-2(i)(4) and shall be interpreted consistently therewith.

C.    Nonrecourse Deductions. Any nonrecourse deductions (as defined in Treasury Regulations Section 1.704-2(b)(1)) for any fiscal year or other period shall be specially allocated to the Members in proportion to their Membership Interests.

D.    Member Nonrecourse Deductions. Those items of Company loss, deduction, or Code Section 705(a)(2)(B) expenditures which are attributable to Member Nonrecourse Debt for any fiscal year or other period shall be specially allocated to the Member who bears the economic risk of loss with respect to the Member Nonrecourse Debt to which such items are attributable in accordance with Treasury Regulations Section 1.704-2(i).

E.    Qualified Income Offset. If a Member unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) or (6), or any other event creates a deficit balance in such Member's Capital Account in excess of such Member's share of Company Minimum Gain, items of Company income and gain shall be specially allocated to such Member in an amount and manner sufficient to eliminate such excess deficit balance as quickly as possible. Any special allocations of items of income and gain pursuant to this Section 5.3E shall be taken into account in computing subsequent allocations of income and gain pursuant to this Article V so that the net amount of any item so allocated and the income, gain, and losses allocated to each Member pursuant to this Section 5.3E to the extent possible, shall be equal to the net amount that would have been allocated to each such Member pursuant to the provisions of this Article V if such unexpected adjustments, allocations, or distributions had not occurred.

5.4    Code Section 704(c) Allocations. Notwithstanding any other provision in this Article V, in accordance with Code Section 704(c) and the Treasury Regulations promulgated thereunder, income, gain, loss, and deduction with respect to any property contributed to the capital of the Company shall, solely for tax purposes, be allocated among the Members so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its fair market value on the date of contribution. Allocations pursuant to this Section 5.4 are solely for purposes of federal, state and local taxes. As such, they shall not affect or in any way be taken into account in computing a Member's Capital Account or share of profits, losses, or other items of distributions pursuant to any provision of this Agreement.

5.5    Distribution of Assets by the Company. Subject to applicable law and any limitations contained elsewhere in this Agreement, Members, acting by unanimous consent, may elect from time to time to cause the Company to make distributions. Distributions shall be first to the Members in proportion to their unreturned capital contributions until each Member has recovered his or her capital contributions, and then to the Members in proportion to their Membership Interests.

## ARTICLE VI
## TRANSFER AND ASSIGNMENT OF INTERESTS

6.1    Transfer and Assignment of Interests. No Member shall be entitled to transfer, assign, convey, sell, encumber or in any way alienate all or any part of his or her Membership Interest (collectively, "transfer") except with the prior approval of a majority in interest of all Membership Interests, which approval may be given or withheld in the sole discretion of the Members. Notwithstanding the generality of the foregoing, Martell may transfer its ownership to another entity, with substantially similar ownership, provided that such transfer shall not have a Material Adverse Effect on the business as such term is defined in the Finance and Service Agreement between the parties dated October   , 2005. Additionally, notwithstanding the generality of the foregoing, a majority must include the vote of Martell's Membership Interest. In the event that a vote of a majority of Membership Interests does not include the affirmative vote of Martell, it shall be deemed not to have been affirmatively voted on.

6.2     <u>Substitution of Members</u>.  A transferee of a Membership Interest shall have the right to become a substitute Member only if (i) consent of the Members is given in accordance with Section 6.1, (ii) such person executes an instrument satisfactory to the Members accepting and adopting the terms and provisions of this Agreement, and (iii) such person pays any reasonable expenses in connection with his or her admission as a new Member.  The admission of a substitute Member shall not release the Member who assigned the Membership Interest from any liability that such Member may have to the Company.  Notwithstanding the generality of the foregoing, Martell may transfer its interest, without the consent of any other Member, to its source of funding.

6.3     <u>Transfers in Violation of this Agreement and Transfers of Partial Membership Interests</u>.  Upon a transfer in violation of Article VI or Article VII, the transferee shall have no right to vote or participate in the management of the Company or to exercise any rights of a Member.  Such transferee shall only be entitled to receive the share of the Company's Net Profits, Net Losses and distributions of the Company's assets to which the transferor would otherwise be entitled.  Notwithstanding the immediately preceding sentences, if, in the determination of the remaining Members, a transfer in violation of this Article VI would cause the termination of the Company under the Code, in the sole discretion of the remaining Members, the transfer shall be null and void.

## ARTICLE VII
## SPECIAL PROVISIONS

7.1    Distributions.    Notwithstanding any other provisions in this Agreement, the Company shall make distributions of cash flow as follows:

A.    While Note from Laing and Murray is Outstanding.    While there is an outstanding note from Laing and Murray (collectively the "Stockholders"), to Intermed Gas Products, Incorporated ("IGI") then, on a bimonthly basis, the Company shall distribute one hundred percent (100%) of its cash flow to its Members in accordance with their Membership Interests. MLCO and WMCO each agrees to in turn distribute one hundred percent (100%) of said cash flow to the Stockholders, who in turn agree to use 100% of said cash flow to repay their note to IGI and cause IGI to use one hundred percent (100%) of such cash flow to pay outstanding third party payables of IGI, until such obligations are paid in full.

B.    After Note from Laing and Murray is Paid.    After the note from the MB Stockholders to IGI is paid in full, then the Company, on a bimonthly basis, shall distribute an amount suffciently adequate so that the member may pay their federal, state and local income taxes on K-1 income from the Company.

7.2    Martell's Option to Purchase.

A.    First Option.    Martell shall have an option to purchase fifty percent (50%) of each of MLCO's and WMCO's Membership Interest in the Company on February 28, 2007, each at a purchase price equal to three and one half (3½) times the cashflow of the Company for the Fiscal Year ended November 30, 2006 multiplied by .25 (representing approximately 25% of the Membership Interests of the Company). Payment shall be made in cash at the time of closing.

B.    Second Option.    Martell shall have an option to purchase fifty percent (50%) of each of MLCO's and WMCO's Membership Interest in the Company on February 28, 2008, each at a purchase price equal to three and one half (3½) times the cashflow of the Company for the Fiscal Year ended November 30, 2007 multiplied by .25 (representing approximately 25% of the Membership Interests of the Company) . Payment shall be made in cash at the time of closing.

C.    Third Option.    At any time prior to November 30, 2006 Martell shall have the option to purchase twenty-five percent (25%) of each of MLCO's and WMCO's Membership Interests in exchange for agreeing to modify the First and Second Options described above as follows:

1.    The First Option shall be modified so that the relevant fiscal year ending is January 31, 2007, the Closing Date is April 30, 2007 and the calculation shall be three and one half (3 1/2) times the cashflow of the Company multiplied by .1875 (representing approximately 18.75% of the Membership Interests of the Company).

2.    The Second Option shall be modified so that the relevant fiscal year ending is January 31, 2008, the Closing Date is April 30, 2008 and the calculation shall be three and one half (3 1/2) times the cashflow of the Company multiplied by .1875 (representing approximately 18.75% of the Membership Interests of the Company).

7.3    Security Agreement.    MLCO and WMCO shall enter into a security or pledge agreement with Martell pledging their Membership Interests in the Company to Martell as additional security for the Advances made by Martell pursuant to the Finance and Service Agreement.

7

## ARTICLE VIII
## ACCOUNTING, RECORDS, REPORTING BY MEMBERS

8.1    Books and Records. The books and records of the Company shall be kept in accordance with the accounting methods followed for federal income tax purposes. The Company shall maintain at the principal office of the Company all of the following:

A.    A current list of the full name and last known business or residence address of each Member set forth in alphabetical order, together with the capital contributions, capital account and Membership Interest of each Member;

B.    A copy of the Articles and any and all amendments thereto together with executed copies of any powers of attorney pursuant to which the Articles or any amendments thereto have been executed;

C.    Copies of the Company's federal, state, and local income tax or information returns and reports, if any, for the six (6) most recent taxable years;

D.    A copy of this Agreement and any and all amendments thereto together with executed copies of any powers of attorney pursuant to which this Agreement or any amendments thereto have been executed;

E.    Copies of the financial statements of the Company, if any, for up to the six (6) most recent fiscal years; and

F.    The Company's books and records as they relate to the internal affairs of the Company, if any, for up to at least the current and past four (4) fiscal years.

8.2    Reports. The Company shall cause to be filed, in accordance with the Act, all reports and documents required to be filed with any governmental agency. The Company shall cause to be prepared at least annually information concerning the Company's operations necessary for the completion of the Members' federal and state income tax returns. The Company shall send or cause to be sent to each Member within ninety (90) days after the end of each taxable year (i) such information as is necessary to complete the Members' federal and state income tax or information returns and (ii) a copy of the Company's federal, state, and local income tax or information returns for the year.

8.3    Bank Accounts. The Members shall maintain the funds of the Company in one or more separate bank accounts in the name of the Company, and shall not permit the funds of the Company to be commingled in any fashion with the funds of any other person

8.4    Tax Matters for the Company. Martell is designated as "Tax Matters Partner" (as defined in Code Section 6231), to represent the Company (at the Company's expense) in connection with all examination of the Company's affairs by tax authorities and to expend Company funds for professional services and costs associated therewith.

8.5    Reports to Members. The Company shall give financial reports to each member, monthly 30 days after the end of each month and annually, 75 days after the end of each year. Martell shall designate the preparer of such financial statements.

8.6    Accountant. The certified public accountants for the Company shall be Rachlin & Cohen or such other certified public accountants as chosen by Martell.

## ARTICLE IX
## DISSOLUTION AND WINDING UP

9.1    <u>Conditions of Dissolution</u>.  The Company shall dissolve upon the occurrence of any of the followir events:

      A.    Upon the entry of a decree of judicial dissolution pursuant to the Act;

      B.    Upon the unanimous consent of the Membership Interests; or

      C.    The sale of all or substantially all of the assets of Company.

9.2    <u>Winding Up</u>.  Upon the dissolution of the Company, the Company's assets shall be disposed of and i affairs wound up.  The Company shall give written notice of the commencement of the dissolution to all of its know creditors.

9.3    <u>Order of Payment of Liabilities Upon Dissolution</u>.  After determining that all the known debts ani liabilities of the Company have been paid or adequately provided for, the remaining assets shall be distributed to th Members in accordance with their positive capital account balances, after taking into account income and loss allocation for the Company's taxable year during which liquidation occurs.

9.4    <u>Limitations on Payments Made in Dissolution</u>.  Except as otherwise specifically provided for in this Agreement, each Member shall be entitled to look only to the assets of the Company for the return of his or her positive Capital Account balance and shall have no recourse for his or her Capital Contribution and/or share of Net Profits agains any other Member except as provided in Article X.

9.5    <u>Certificates</u>.  The Company shall file with the New York Secretary of State, a Certificate of Dissolution upon the dissolution of the Company and a Certificate of Cancellation upon the completion of the winding up of the Company's affairs.

## ARTICLE X
## INDEMNIFICATION

10.1    <u>Indemnification of Agents</u>.  The Company shall indemnify any Member and may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding by reason of the fact that he or she is or was a Member, officer, employee or other agent of the Company or that, being or having been such a Member, officer, employee or agent, he or she is or was serving at the request of the Company as a manager, director, officer, employee or other agent of another limited liability company, corporation, partnership, joint venture, trust or other enterprise (all such persons being referred to hereinafter as an "agent"), to the fullest extent permitted by applicable law in effect on the date hereof and to such greater extent as applicable law may hereafter from time to time permit.

## ARTICLE XI
## INVESTMENT REPRESENTATIONS

Each Member hereby represents and warrants to, and agrees with, the Members and the Company as follows:

11.1    <u>Preexisting Relationship or Experience</u>.  He or she has a preexisting personal or business relationship with the Company or one or more of its officers or controlling persons, or by reason of his or her business or financial experience, or by reason of the business or financial experience of his or her financial advisor who is unaffiliated with and who is not compensated, directly or indirectly, by the Company or any affiliate or selling agent of the Company, he or she

is capable of evaluating the risks and merits of an investment in the Company and of protecting his or her own interest connection with this investment.

11.2    _No Advertising_. He or she has not seen, received, been presented with, or been solicited by a leaflet, public promotional meeting, article or any other form of advertising or general solicited with respect to the sale the Membership Interest.

11.3    _Investment Intent_. He or she is acquiring the Membership Interest for investment purposes for his her own account only and not with a view to or for sale in connection with any distribution of all or any part of th Membership Interest. No other person will have any direct or indirect beneficial interest in or right to the Membersh Interest.

11.4    _Legal Representation_. He or she has had the opportunity to consult with legal counsel before assentin to the terms of this Agreement.

## ARTICLE XII
## MISCELLANEOUS

12.1    _Complete Agreement_. This Agreement and the Articles constitute the complete and exclusive statement of agreement among the Members with respect to the subject matter herein and therein and replace and supersede all prior written and oral agreements among the Members. To the extent that any provision of the Articles conflict with any provision of this Agreement, the Articles shall control.

12.2    _Binding Effect_. Subject to the provisions of this Agreement relating to transferability, this Agreement will be binding upon and inure to the benefit of the Members, and their respective successors and assigns.

12.3    _Interpretation_. All pronouns shall be deemed to refer to the masculine, feminine, or neuter, singular or plural, as the context in which they are used may require. All headings herein are inserted only for convenience and ease of reference and are not to be considered in the interpretation of any provision of this Agreement. Numbered or lettered articles, sections and subsections herein contained refer to articles, sections and subsections of this Agreement unless otherwise expressly stated. In the event any claim is made by any Member relating to any conflict, omission or ambiguity in this Agreement, no presumption or burden of proof or persuasion shall be implied by virtue of the fact that this Agreement was prepared by or at the request of a particular Member or his or her counsel.

12.4

_Jurisdiction_. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK, INCLUDING, WITHOUT LIMITATION, SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW AND RULE 327(b) OF THE NEW YORK CIVIL PRACTICE LAW AND RULES. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE FEDERAL AND STATE COURTS LOCATED IN THE CITY, COUNTY AND STATE OF NEW YORK IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING RELATED TO THIS AGREEMENT OR ANY OF THE MATTERS CONTEMPLATED HEREBY, IRREVOCABLY WAIVES ANY DEFENSE OF LACK OF PERSONAL JURISDICTION AND IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUIT, ACTION OR PROCEEDING SHALL BE HEARD AND DETERMINED IN SUCH COURT. EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES, TO THE FULLEST EXTENT THEY MAY EFFECTIVELY DO SO UNDER APPLICABLE LAW, ANY OBJECTION WHICH THEY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT AND ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

12.5    Service. Each Member further agrees that personal jurisdiction over him or her may be effected
service of process by registered or certified mail addressed as provided in Section 12.7 of this Agreement, a
that when so made shall be as if served upon him or her personally within the State of New York.

12.6    Severability. If any provision of this Agreement or the application of such provision to any person
circumstance shall be held invalid, the remainder of this Agreement or the application of such provision
persons or circumstances other than those to which it is held invalid shall not be affected thereby.

12.7    Notices. Any notice to be given or to be served upon the Company or any party hereto in connecti
with this Agreement must be in writing (which may include facsimile) and will be deemed to have been giv
and received when delivered to the address specified by the party to receive the notice. Such notices will l
given to a Member at the address specified in Exhibit A hereto. Any party may, at any time by giving five (
days' prior written notice to the other Members, designate any other address in substitution of the foregoi
address to which such notice will be given.

12.8    Amendments. All amendments to this Agreement will be in writing and signed by all of the Member

12.9    Multiple Counterparts. This Agreement may be executed in two or more counterparts, each of whic
shall be deemed an original, but all of which shall constitute one and the same instrument. Facsimile signature
shall be valid to enforce this Agreement.

12.10    Attorney Fees. In the event that any dispute between the Company and the Members or among th
Members should result in litigation or arbitration, the prevailing party in such dispute shall be entitled to recove
from the other party all reasonable fees, costs and expenses of enforcing any right of the prevailing part
including without limitation, reasonable attorneys' fees and expenses, all of which shall be deemed to hav
accrued upon the commencement of such action and shall be paid whether or not such action is prosecuted t
judgment. Any judgment or order entered in such action shall contain a specific provision providing for the
recovery of attorney fees and costs incurred in enforcing such judgment and an award of prejudgment interes
from the date of the breach at the maximum rate allowed by law. For the purposes of this Section: (a) attorne
fees shall include, without limitation, fees incurred in the following: (1) postjudgment motions; (2) contemp
proceedings; (3) garnishment, levy, and debtor and third party examinations; (4) discovery; and (5) bankruptc
litigation and (b) prevailing party shall mean the party who is determined in the proceeding to have prevailed o
who prevails by dismissal, default or otherwise.

12.11    Remedies Cumulative. The remedies under this Agreement are cumulative and shall not exclude any
other remedies to which any person may be lawfully entitled.

### THE BALANCE OF THIS PAGE INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, all of the Members of Intermed Gas Products, LLC, A New York Limited Liab Company, have executed this Agreement, effective as of the date written above.

Martell, LLC

By: Michael Milea, Managing Member

[MLCO]

By Michael Laing, President

[WMCO]

PRESIDEN

By: William Murray, President

CONSENTED TO AS TO SECTION 4.4:

Michael Laing, individually

William Murray, individually

CAPITAL CONTRIBUTION AND ADDRESSES OF MEMBERS
AS OF OCTOBER 1, 2005

| Member's Name | Member's Address | Member's Capital Contribution | Member's Membership Interest |
|---|---|---|---|
| Martell, LLC. | 405 Park Avenue, 15th Floor, New York, NY 10022 | $ | 1% |
| [MLCO] | 4100 N. Powerline Road, U-4 Pompano Beach, Florida 33073 | $ | 49 1/2% |
| [WMCO] | 4100 N. Powerline Road, U-4 Pompano Beach, Florida 33073 | | 49 1/3% |